511 So.2d 569 (1987)
E.G. GREEN, Trustee, Appellant,
v.
FIRST AMERICAN BANK and TRUST, Trustee, Brown Bolte, Henry Gillespie, Frank H. Gillespie, Leo S. Harmonay, James O'Rourke, Nathaniel P. Reed, Alta Weaver Reed, Richard E. Schumacher, and Michael Zarilli, Appellees.
No. 85-489.
District Court of Appeal of Florida, Fourth District.
April 1, 1987.
Rehearing Denied September 17, 1987.
*570 Larry Klein of Klein & Beranek, P.A., and Sidney A. Stubbs, Jr., of Jones & Foster, P.A., West Palm Beach, for appellant.
Robert Lambert, North Palm Beach, for appellees  Bolte, Gillespie, Harmonay, O'Rourke, Reed, Schumacher and Zarilli.
Edna L. Caruso of Edna L. Caruso, P.A., Montgomery, Lytal, Reiter, Denney & Searcy, P.A., and Ronald Sales, West Palm Beach, for intervenor  Knight Enterprises.
DOWNEY, Judge.
Appellant, E.G. Green (Green), appeals from an adverse final judgment in a suit for declaratory relief, seeking a determination of the efficacy of his purported exercise of right of first refusal to purchase a parcel of real property.
It appears that Green and nine other individuals purchased a parcel of real property in Boca Raton, Florida, title to which was placed in the name of First American Bank and Trust Company of Riviera Beach, as trustee. Among other things, the trust agreement provided in Paragraph 2 that, in the event there was a bona fide offer to purchase the property found acceptable by the majority of the beneficiaries of the trust, any or all of the minority beneficiaries should have the right to purchase the interest of the majority on the same terms and conditions as the offer.
On February 7, 1984, Knight Enterprises (Knight) submitted to the trustee a contract to purchase the property for $3,552,500, which included a 10% real estate brokerage commission. Nine of the beneficiaries, *571 representing 85% of the beneficial interest, requested the trustee to accept the offer and notify Green and afford him the opportunity to exercise his right of "first refusal." On February 15, 1984, Green's attorney wrote to advise the bank he was exercising his minority right under the trust agreement, and that the attorney was holding Green's check for $100,000 pending the bank's determination that the exercise of the minority right was valid, whereupon the check would be delivered and a formal agreement entered into.[1] The trustee acknowledged receipt of Green's purported exercise of the right of first refusal by stating that it had received Green's lawyer's letter confirming that he held Green's check for $100,000; that it wished to confirm that Green was now obligated to perform the terms and conditions of the Knight contract.[2]
On March 2, 1984, Green and a representative of the bank executed an agreement under which Green would pay an amount equal to the amount offered by Knight less the 10% broker's commission and less the value of Green's existing 15% beneficial interest. There was a proviso that the agreement was subject to approval by the land trust beneficiaries. The majority beneficiaries refused the Green offer because it was 10% less than the Knight offer. No objection appears to have been made in this case regarding Green's withholding the 15% value of his beneficial interest.
The bank notified Green that the majority beneficiaries did not regard his proposal as a valid exercise of his minority interest right, but that the majority would give Green ten additional days to meet the Knight offer. Green's response through counsel was that Green's "offer" was the same as Knight's in all material respects. Thereupon, the trustee and nine other beneficiaries of the trust, hereinafter referred to collectively as the trustee, filed this suit on May 7, 1984, seeking a judicial declaration as to whether Green had properly exercised his right of first refusal and a determination as to whether the property should be conveyed to Green or Knight. Knight intervened, assuming the same legal position as the trustee, that Green had not properly exercised his right of first refusal because he had deducted the brokerage commission. In opposition thereto Green's affidavit stated that, in deducting the commission from the purchase price, he had relied on a recent trial court decision in another case, in which he was a participant. However, that decision was reversed by the Fourth District Court of Appeal.[3] Green stated that he had always been willing to effectively exercise his minority right and was then willing to match the Knight offer. However, Green's deposition was taken the day after his affidavit was filed, wherein he testified that he never intended to pay the same purchase price as Knight had offered because he intended from the beginning to deduct the brokerage commission *572 provided in the Knight contract and he never communicated an offer to the trustee to fully meet the Knight offer until the previous day, January 8, 1985. This, of course, was well after the extension of time granted by the other beneficiaries for him to meet the Knight offer.
The trial court entered a summary final judgment in favor of the trustee, essentially holding that Green had not properly exercised his right of first refusal because he had not agreed to the same terms and conditions contained in the Knight contract. Green's offer was for $2,717,662.50, whereas Knight's offer was for $3,552,500  the difference being that Green deducted the brokerage commission provided in the Knight contract and his 15% interest as a beneficiary of the trust.[4] The trial court found that Green's counsel's original letter of February 15, 1984, constituted a valid exercise of Green's minority option right, but subsequently Green's proposed agreement negated, waived or retracted the valid exercise of the option by offering less money, because of Green's unilateral mistake of law.
Green timely perfected this appeal from said judgment, which was not stayed because Green elected not to post a supersedeas bond. In advising the trustee that he would not supersede the judgment pending appeal, Green also advised the trustee that, if the other beneficiaries decided to sell to Knight pending appeal, he would be cooperative and not impede the sale, so long as he retained his rights to pursue money damages against the trustee if he was successful in the appellate proceedings. In view of that, the trustee closed the sale to Knight in April, 1985, and disbursed the proceeds thereof to the ten beneficiaries of the trust. Knight moved for dismissal of the appeal, contending that Green is now estopped to attack the judgment because he has accepted the benefits thereof in that he has accepted his 15% of the proceeds of the sale to Knight.
There is a long standing principle or rule that one who recovers a judgment and accepts the benefits provided therein may not thereafter seek to reverse the judgment. That rule and its rationale are elucidated in an opinion authored by Judge John Wigginton in Carter v. Carter, 141 So.2d 591, 592-593 (Fla. 1st DCA 1962), wherein the court stated:
It is a well established principle of law prevailing in this state that where a party recovering a judgment or decree accepts the benefits thereof voluntarily and knowing the facts, he is estopped to afterwards seek a reversal of such judgment or decree on appeal. His conduct amounts to a release of errors. His acceptance of payment or enforcement of the judgment or decree is a waiver of error, and estops the successful party from appealing. If under such circumstances an appeal were permitted which resulted in a reversal of the judgment or decree subjected to review, there would be no means by which the status quo of the parties could by restored, and would give the prevailing party an inequitable and unjust advantage over his unsuccessful adversary. The foregoing principle applies to appeals from decrees awarding alimony or questioning the propriety of a divorce or other provisions of the decree the same as it does to other civil suits, in the absence of a contrary statute or court rule.
(Footnotes omitted.) See also McMullen v. Fort Pierce Financing & Construction Co., 108 Fla. 492, 146 So. 567 (1933).
In Carter the court held that appellant wife could not pursue an appeal from the final judgment of divorce because she had accepted all of the money and property awarded to her under the decree; having accepted the benefits thereof, she was estopped to question the validity of any part of the judgment. Shortly after its decision in Carter, the same court decided Rayle v. Merrill, 141 So.2d 288, 288-289 (Fla. 1st DCA 1962), in which the court set forth the reasons for the rule as follows:

*573 It was there [in Carter] pointed out that if under such circumstances an appeal were permitted which resulted in a reversal of the judgment or decree subjected to review, there would be no means by which the status quo of the parties could be restored, and would give the prevailing party an inequitable and unjust advantage over his unsuccessful adversary. Appellant's entitlement to payment of the judgment awarded him by the decree under assault was dependent upon the validity of the decree in its entirety. Having accepted payment of the judgment, appellant is now estopped to question its correctness.
The Florida Supreme Court, in McMullen, recognized two exceptions to the rule, one of which could be applicable here. That is:
that the general rule does not apply when an amount found in favor of a litigant by a judgment or decree is due him in any event  when there is no controversy over his right to receive and retain it  so that the only question to be determined by the appellate tribunal is whether he is or is not entitled to a greater or additional sum, citing note in 29 L.R.A. (N.S.) page 30.
146 So. at 569.
Adverting to the facts of this case, the trustee filed suit for declaratory relief to determine whether Green had properly exercised his right of first refusal and to advise the trustee whether he should convey to Knight or to Green. The trial court found that Green had not properly exercised his minority right and thus the trustee should convey to Knight. The court did not rule in Green's favor; it ruled against him. The court did not award Green his 15% interest in the property; he acquired that under the trust agreement entered into with the other minority trust beneficiaries. Thus, he took nothing by the judgment  it, in fact, militated against his interests. Furthermore, the spirit and rationale of the rule do not mandate its application here because, whether Green took his 15% distributive share of the proceeds of the Knight sale or left them with the trustee pending disposition of this appeal, the problems created by the sale to Knight and disposition of the proceeds in trying to restore the status quo in the event of a reversal would be no greater, nor would Green have achieved an inequitable or unjust advantage over his adversaries. That there will be no advantage accruing to Green, or problems in trying to create a status quo should he win the appeal, is even more apparent by the position Green took in declining to supersede the judgment and offering to cooperate in the disposition of the property subject only to his right to preserve his claim for damages. If Green should win the appeal, he keeps what he received from the Knight sale, as do all the other beneficiaries, and he may then seek to recover the damages he suffered from the breach of contract, if any. If he loses the appeal, and the judgment is affirmed, Green keeps what he received for his interest in the trust property and that is the end of it.
Finally, we believe that a rule such as the acceptance of benefits doctrine, considering that it has the effect of precluding appellate review, should be applied only in situations where it is clearly applicable; where it is apparent that the appellant has accepted benefits provided to him from the very judgment he now condemns in the pending appeal. For these reasons we believe the motion to dismiss should be denied.
Turning now to the merits of the case, we hold the judgment should be affirmed because the trial judge's ultimate conclusion was correct, regardless of the reasons given therefor. An appellate court will affirm an order of a trial court on appeal consistent with any theory revealed by the record, regardless of the reasons stated in the order under review. E.g., Elmex Corp. v. Atlantic Federal Savings & Loan Ass'n of Ft. Lauderdale, 325 So.2d 58 (Fla. 4th DCA 1976).
The contract between the trust beneficiaries provided for a right of first refusal by minority members should the majority wish to accept a third party offer to purchase the property. That right of first refusal provided that the minority must *574 offer to purchase on the same terms and conditions as those contained in the third party offer. The relationship between a right of first refusal and an option is described in Coastal Bay Golf Club, Inc. v. Holbein, 231 So.2d 854, 857 (Fla. 3d DCA 1970), wherein the court stated:
A right of first refusal is a right to elect to take specified property at the same price and on the same terms and conditions as those continued in good faith offer by a third person if the owner manifests a willingness to accept the offer... . That right is clearly an executory right. It is therefore not an option because an option is an executed contract.... But when we combine the two concepts we see that a right of first refusal ripens into an option once an owner manifests a willingness to accept a good faith offer. In the present case appellant's right to first refusal has ripened into an option. Therefore the principles stated in Mathews v. Kingsley apply to appellant's attempt to exercise its ripened right of first refusal.
(Citations omitted.) Thus, when the majority beneficiaries elected to accept the Knight offer, the right of first refusal ripened into an option. The rules relative to option contracts are definite and require exact conformity with the matching offer in all its essential terms. Coastal Bay, at 858. In Mathews v. Kingsley, 100 So.2d 445, 446 (Fla. 2d DCA 1958), the court provided that:
In order properly to exercise the option to purchase under an option contract, thus imposing a duty on the vendor to convey the land in accordance with the terms and conditions provided therein, the vendee must strictly comply with the applicable provisions of the contract. Orlando Realty Board Bldg. Corp. v. Hilpert, 1927, 93 Fla. 954, 113 So. 100. It is necessary that the optionee accept the terms of the option unqualifiedly... .
Applying those rules to the facts of the present case, we find the majority beneficiaries elected to accept a good faith offer from Knight to purchase the property for $3,552,500, including a 10% broker's commission. At that point the first refusal provision of paragraph 2 of the trust agreement matured into an option, which to be exercised effectively must, under the rules, have "strictly" and "unqualifiedly" matched the terms and conditions of the Knight offer. Regardless of those requirements, and in the face of the majorities' refusal to accept that offer, Green refused to meet the Knight offer and pay the full amount thereof, less his beneficial interest. Green would excuse his refusal to meet the Knight offer by reliance upon a recent trial court order in another case, which he ultimately learned was an incorrect interpretation of the law. We reject Green's excuse for taking that erroneous legal position if for no other reason than that there were at least three Florida decisions holding that his offer to pay the Knight purchase price, less the brokerage commission, was not a sufficient or adequate matching of the Knight offer. Those cases are Lehr v. Breakstone, 472 So.2d 1333 (Fla. 3d DCA 1985); City National Bank of Miami Beach v. Lundgren, 307 So.2d 870 (Fla. 3d DCA), cert. denied, 316 So.2d 286 (1975), and Coastal Bay Golf Club, Inc. v. Holbein, 231 So.2d 854 (Fla. 3d DCA 1970).
Green contends that he properly exercised the option by his lawyer's letter of February 15, 1984, set forth in the margin at footnote 1; that his subsequent submission of a contract between the trustee and him calling for only $3,197,025 did not waive or negate the already exercised option. He argues that, once exercised, a subsequent disagreement over the amount due is simply subject to negotiation or judicial adjustment. Our answer to those contentions is that, first of all, Green's purported exercise of his option is very questionable because of its phraseology. It never states that he is exercising his right to purchase on the same terms and conditions set forth in Knight's offer. And, well he couldn't, because, by his own admission in his deposition, he never intended to pay the same price Knight offered  neither then, nor at any time, until January 8, 1985, when his time for exercising the option was long since expired.
*575 The trial judge found that, although Green had initially exercised the option, he "effectively negated or waived the valid exercise of the option" by submitting a proposed "Agreement" that did not match the Knight offer. The legal effect of that "Agreement" was to retract the prior offer  notwithstanding the defendants' unilateral mistake of law. We differ somewhat with the trial judge and hold that the original offer contained in Green's lawyer's letter of February 15, 1984, was not a sufficient exercise of the option because, as Green himself admits, he never intended to match Knight's offer because of the deletion of the brokerage commission, which may well be the reason the offer was stated in such a vague fashion. This, of course, does not impair the decision below because of the rule that, if the decision can be supported on any theory revealed by the record, it should be affirmed. E.g., Crudele v. Cook, 165 So.2d 424 (Fla. 3d DCA), cert. denied, 165 So.2d 424 (1963).
Accordingly, we affirm the judgment appealed from.
LETTS, J., concurs.
GLICKSTEIN, J., concurs specially with opinion.
GLICKSTEIN, Judge, concurring specially.
I write only to question whether a year's delay from oral argument to circulation of an opinion can be justified, however hard the case or heavy the case load.
Such delay may be unavoidable when a critical question affecting the outcome of the appeal is awaiting determination in the Florida Supreme Court; but how do appellate attorneys explain long delay to clients who look impatiently to an end to their litigation, absent such a circumstance? I do not think "Sat cito si recte" will suffice  particularly in the eyes of the losing party.
NOTES
[1] The following is the exact text of said letter:

This will advise you that E.G. Green is exercising his minority right pursuant to paragraph 2 of the Trust Agreement between E.G. Green and others with regard to the land located at Congress and Clint Moore Road in Boca Raton.
Pursuant to the terms of a contract from Knight Enterprises, Inc., dated February 7, 1984 and a copy of which was delivered to Mr. Green on February 10, 1984 at 5:00 p.m. This delivery of the contract was also accompanied by a letter directing you to accept the offer in said contract and signed by all beneficiaries except E.G. Green.
We are holding Mr. Green's check in the sum of $100,000 and upon your determination that we have validly exercised our minority interest right will deliver same at your instruction and enter into a formal agreement.
[2] The pertinent text of the trustee's letter stated:

This will acknowledge receipt of your hand delivered letter received this date consisting of your confirmation that Mr. E.G. Green deposited with you the sum of $100,000 for the purpose of exercising his minority right. We wish to confirm that Mr. Green is now obligated to perform, as buyer, the terms and conditions of that certain contract submitted by Knight Enterprises, Inc., a Florida corporation dated February 7, 1984 which said contract had been approved by a majority of the beneficial interest holders of the captioned trust.
[3] Anderson v. Draddy, 458 So.2d 803 (Fla. 4th DCA 1984), rev. denied, 467 So.2d 999 (1985).
[4] The trustee has raised no objection to Green's not including his interest in the property as part of his offer.