961 So.2d 977 (2007)
7-ELEVEN, INC., Appellant,
v.
STIN, L.L.C., Margaret Kobliska and Paul Flanigan, Appellees.
No. 4D06-913.
District Court of Appeal of Florida, Fourth District.
June 20, 2007.
Rehearing Denied August 27, 2007.
Ronald S. Holliday and S. Douglas Knox of DLA Piper U.S. LLP, Tampa, for appellant.
Beverly A. Pohl and John R. Gillespie of Broad and Cassel, Fort Lauderdale, for appellee Paul Flanigan.
REYES, ISRAEL U., Associate Judge.
The Defendant lessee, 7-Eleven, Inc., timely appeals a final declaratory judgment, *978 stating that the owners/lessors, Margaret Kobliska and Stin, L.L.C., were obligated to sell the subject property to prospective buyer Paul Flanigan because 7-Eleven failed to exercise its right of first refusal. The standard of review is de novo. See Lawyers Title Ins. Co. v. Novastar Mortgage, Inc., 862 So.2d 793, 797 (Fla. 4th DCA 2003). We reverse.
In 1974, 7-Eleven and the property owners' predecessor entered into a lease, which contained a right of first refusal clause that is the subject of this appeal. Paragraph twenty, entitled "Right of First Refusal," states:
If during the term of this lease, or any extension thereof, Lessor shall receive a bona fide offer to purchase the demised premises, which offer is acceptable to Lessor, Lessor agrees that Lessee shall have and is hereby granted an option to purchase the demised premises upon the same terms and provisions. Lessor agrees immediately after receipt of such offer to give Lessee notice in writing of the terms and provisions thereof, and that Lessee may exercise its option to purchase said property at any time within twenty days after such notice is received by Lessee. If Lessee shall elect to exercise such option it shall do so by giving notice in writing to Lessor within such twenty-day period and a contract of sale shall be executed by the parties and title closed within a reasonable time thereafter.
On October 28, 2004, the owners and Paul Flanigan signed an agreement whereby Flanigan would purchase the property for $2,270,000. Flanigan gave the owners a deposit of $120,000. Flanigan's contract further provided that Flanigan and the owners would enter into a three-year lease that would have a monthly rent of $10,000. At the closing, which was to be at the end of the lease, the owners would receive the remaining $2,150,000 in the form of wired funds or a cashier's check. Flanigan would have all risk of condemnation until midnight of the closing date.
By letter dated October 29, 2004, the owners notified 7-Eleven, in accordance with paragraph twenty of 7-Eleven's lease, that they had received a "bona fide offer" and that 7-Eleven had
20 days from date of receipt of this notice to elect to purchase the property under the same terms and conditions contained in this offer which is acceptable to the Lessor. Your decision to exercise must be in writing and received by the undersigned, on behalf of the Lessor, within such 20 day period.
Upon receiving the letter, 7-Eleven sent a response, stating that
7-Eleven, Inc., hereby exercises its right to purchase the captioned property for Two Million Two Hundred Seventy Thousand and 00/100 Dollars ($2,270,000.00), pursuant to your letter dated October 29, 2004 and Article 20 of the lease dated March 26, 1974, originally between Palm Cottages and Apartments, Inc. and The Southland Corporation.
Within the next few days, a contract will be prepared and forwarded to you for signature on behalf of the landlord.
On December 2, 2004, the owners rejected 7-Eleven's first proposed contract, which followed the letter, stating:
[T]here [were] a number of essential terms in the Flanigan agreement which 7-Eleven chose not to match in its offer. These terms include, but are not limited to, the net consideration which would be realized by the seller under the Flanigan contract versus that offered by 7-Eleven, the availability of the deposit to the seller, assessment of closing costs, allocation of risk between buyer and seller *979 in the event of condemnation or casualty prior to closing, and the extent of seller's and buyer's remedies in the event of the other party's default.
Due to the above differences in the contract proposals, the owner must reject 7-Eleven's offer as not satisfying the requirements of the right of first refusal and will now proceed with the Flanigan contract.
The day after the owners rejected the offer, 7-Eleven informed the owners that it was "prepared to match the terms, as outlined in the Purchase Agreement between [the owners], as Seller and Paul Flanigan, as buyer, dated October 28, 2004." Thereafter, 7-Eleven sent a follow-up letter reaffirming that "7-Eleven [was] prepared to meet all material terms of the Flanigan agreement in connection with its election to exercise its right of first refusal under its Lease Agreement." This letter also said that enclosed was a "revised Purchase Agreement." The revised agreement stated that the purchase price was $2,150,000, but, for three years, 7-Eleven would lease the property for an additional $10,000 a month. Unlike the prior agreement, this contract did not mention putting money in escrow, and this agreement said 7-Eleven bore the risk of condemnation. According to the owners' attorney, this version included the material terms.
After receiving 7-Eleven's second contract, the owners sought declaratory relief. The owners requested that the trial court determine that 7-Eleven did not properly exercise its right of first refusal, relying on the deficiencies of the first proposed contract. When answering the complaint, 7-Eleven admitted that, in November of 2004, it gave the owners the first "proposed contract." After the owners said the contract contained "certain deficiencies," 7-Eleven "transmitted a revised Purchase Agreement to Plaintiffs on December 13, 2004." 7-Eleven believed that "to the extent the so-called `November Agreement' contained any deficiencies, . . . [they were cured] by the [] `December Agreement.'"
Thereafter, Flanigan and 7-Eleven moved for summary judgment. According to 7-Eleven, the right of first refusal contemplated a three-step process. First, once the owners received a suitable offer, they were obligated to provide 7-Eleven with written notice. Second, 7-Eleven had twenty days to inform the owners of its decision to purchase the property. Third, 7-Eleven and the owners were obligated to enter into a contract within a reasonable time period.
In its motion, and at a subsequent hearing, 7-Eleven argued it was entitled to summary judgment because it submitted a letter that provided notice and also submitted "a proposed contract" and a revised contract. According to 7-Eleven, the only real difference between its first contract and Flanigan's was Flanigan's provision for a lease, and, despite any differences, its agreement met or exceeded Flanigan's material terms.
The trial court granted summary judgment in Flanigan's favor. The trial court found that 7-Eleven's first proposed agreement had material differences because it did not contain a three-year lease provision, failed to require a deposit, and was silent as to the sharing of responsibility in the event of condemnation. Thus, the first proposed contract failed to meet the essential terms, and the company failed to properly exercise the right of first refusal. Having granted summary judgment in Flanigan's favor, the trial court subsequently declared that 7-Eleven's right of first refusal expired and that Flanigan had an enforceable purchase agreement.
*980 We reverse, concluding that, under the specific facts in this case, 7-Eleven properly exercised its right of first refusal by submitting its letter dated November 15, 2004, and the second proposed contract on December 13, 2004.
Before we proceed further, we would note that this factual scenario is not typical because the Flanigan contract contemplated the operation of a restaurant and contained provisions to that end, such as additional construction and parking. These conditions, which the trial court correctly recognized did not have to be matched by 7-Eleven, made the exercise of the right of first refusal by 7-Eleven more complicated than if the property were going to be used for the same purpose by both offerors. Because of this difference in uses, we conclude that 7-Eleven's first proposed contract should not have been 7-Eleven's only opportunity to match Flanigan's offer.
The case of Green v. First American Bank & Trust, 511 So.2d 569 (Fla. 4th DCA 1987), cited by the owners, is distinguishable. In Green, Knight Enterprises, a third party, submitted an offer to a property's trustee. See id. at 570. Upon receiving notice of the offer, E.G. Green, a minority owner of the property, submitted a letter that said he was exercising his right to purchase the property. See id. at 571 n. 1. The letter's exact language said:
This will advise you that E.G. Green is exercising his minority right pursuant to paragraph 2 of the Trust Agreement between E.G. Green and others with regard to the land located at Congress and Clint Moore Road in Boca Raton.
Pursuant to the terms of a contract from Knight Enterprises, Inc., dated February 7, 1984 and a copy of which was delivered to Mr. Green on February 10, 1984 at 5:00 p.m. This delivery of the contract was also accompanied by a letter directing you to accept the offer in said contract and signed by all beneficiaries except E.G. Green.
Id. Green subsequently submitted an agreement that stipulated he would pay an amount equal to the amount offered by Knight Enterprises less the 10% broker's commission. See id. at 571. When Green refused to offer the same amount of money as Knight, the trustees sought a declaratory judgment as to whether Green had properly exercised his right of first refusal or whether the trustees could sell the property to Knight Enterprises. See id. The trial court found that while Green's letter validly exercised the right of first refusal, his proposed offer waived or retracted that offer. See id. at 572.
Similar to the arguments raised by 7-Eleven, Green argued on appeal that his letter legally exercised his right of first refusal and any problems with the price of his offer did not waive that right. This court rejected that contention:
Green's purported exercise of his option is very questionable because of its phraseology. It never states that he is exercising his right to purchase on the same terms and conditions set forth in Knight's offer. . . . [T]he original offer contained in Green's lawyer's letter of February 15, 1984, was not a sufficient exercise of the option because, as Green himself admits, he never intended to match Knight's offer because of the deletion of the brokerage commission, which may well be the reason the offer was stated in such a vague fashion.
Id. at 574-75.
Relying on Pearson v. Fulton, 497 So.2d 898 (Fla. 2d DCA 1986), and Keys Lobster, Inc. v. Ocean Divers, Inc., 468 So.2d 360, 361 (Fla. 3d DCA 1985), 7-Eleven asserts that it exercised the right of first refusal by sending a letter on November 15, 2004, *981 which stated it was exercising its right and would send a contract. In Pearson, the parties did not dispute that the appellant exercised his right of first refusal when he sent a letter to the trustees of the property stating "[p]lease take notice that we hereby elect to exercise that right of first refusal and hereby demand that you forward any or all executed contracts pursuant to that right to the undersigned at this address." 497 So.2d at 899. However, the Second District, despite stating that it had no difficulties holding the letter was sufficient to exercise the option, did not address what a party must include in the letter. See id. at 900.
In Keys Lobster, Ocean Divers sent Keys Lobster a letter, stating that "it was exercising its right of first refusal `under the terms of the . . . Purchase Agreement.'" 468 So.2d at 361. Litigation commenced when Keys Lobster refused to sell the property to Ocean Divers. See id. at 362. The Third District agreed with the trial court that Ocean Divers executed the right of first refusal and formed a binding contract by sending its letter to Keys Lobster. See id. at 363. When reaching this conclusion, the Third District explicitly stated that it would have reached the same conclusion
even if Ocean Divers had not included the language "under the terms of the . . . Purchase Agreement" in its letter. When a party exercises its right of first refusal, it "elect[s] to take [the subject] property at the same price and on the same terms and conditions as those contained in [a] good faith offer by a third person if the owner manifests a willingness to accept the offer." Coastal Bay Golf Club, Inc. v. Holbein, 231 So.2d 854, 857 (Fla. 3d DCA 1970) (emphasis added).
Id. at 363 n. 2.
Contracts should receive a construction that is reasonable, practicable, sensible, and just. See Doctors Co. v. Health Mgmt. Assocs., Inc., 943 So.2d 807, 809 (Fla. 2d DCA 2006), review denied, 956 So.2d 455 (Fla.2007). In its letter exercising its right of first refusal, 7-Eleven cited to Paragraph 20 of the subject lease and the letter sent by the seller. Thus, 7-Eleven, by invocation of Paragraph 20, was agreeing to the same material terms as the contract between the seller and Flanigan. It was not necessary for 7-Eleven to parrot the terms of the Flanigan contract because, by invoking the other two documents, 7-Eleven was essentially agreeing to the terms of the Flanigan contract. It is of no import that other non-material terms remained to be negotiated. See, e.g., Am. Capital Network v. Command Credit Corp., 707 So.2d 874 (Fla. 4th DCA 1998); Hous. Auth. of City of Fort Pierce v. Foster, 237 So.2d 569 (Fla. 4th DCA 1970); Bluevack, Inc. v. Walter E. Heller & Co. of Fla., 331 So.2d 359 (Fla. 3d DCA 1976).
We conclude that, under these specific facts, 7-Eleven properly exercised its right of first refusal by sending the letter and the second contract, which satisfied the objections to the first proposed contract. Although we can see how the trial court concluded to the contrary, based on precedent, in this case, it would have been unreasonable to require 7-Eleven to have only one opportunity to proffer a formal contract because the Flanigan offer contemplated a different use and some conditions were irrelevant if 7-Eleven purchased. Accordingly, we must reverse and remand for entry of a final declaratory judgment in favor of 7-Eleven.
Reversed and remanded for further proceedings.
KLEIN and SHAHOOD, JJ., concur.