Banta *v.* Vreeland.

SAMUEL T. BANTA *vs.* THOMAS B. VREELAND and ANN VREELAND.

On a bill filed for the foreclosure of a mortgage, in which it is alleged that the mortgage had been cancelled, and with the bond had been surrendered to the defendant by mistake, under a mistaken apprehension that the mortgage debt had been satisfied, when in truth it had not—

*Held* that the voluntary cancellation of the securities by the holder is a very strong circumstance, which can only be overcome by clear evi-

dence; but that the evidence in this case shows satisfactorily that the mortgage has never been paid.

Equity will relieve where an instrument has been delivered up or cancelled through fraud or mistake.

The present case does not fall within the principle, that to entitle the party to relief on the ground of mistake, it must be of such a fact as he could not by reasonable diligence have obtained knowledge of.

*Zabriskie*, for complainant.

*Gilchrist*, for defendants.

THE CHANCELLOR. The bill is filed to foreclose two mortgages upon the same premises. The first was given by Jacob C. Vreeland to Conrad Vreeland, dated the thirteenth of March, 1844, for $300, and assigned to the complainant by the executor of the mortgagee. The second was given by Jacob C. Vreeland to the complainant, dated December tenth, 1851, for $628.11. In regard to the second mortgage, there is no dispute. The first mortgage was cancelled of record, ·and the bond and mortgage surrendered by the complainant to the defendant on the seventeenth of October, 1860. The bill, which was filed a few days after the cancellation, alleges that this cancellation of the mortgage was made by the complainant under a mistaken apprehension that the mortgage had been satisfied, when in truth it had not. The truth of this averment constitutes the material inquiry in the cause.

Was that mortgage debt ever paid?

The mortgaged premises, on the seventeenth of November, 1856, were conveyed by Jacob C. Vreeland, the mortgagor, to his brother, Thomas B. Vreeland, the defendant. The mortgage was surrendered and cancelled of record on the seventeenth of October, 1860. The evidence shows clearly that nothing was paid upon the mortgage, nor was it satisfied in any way by any act done, or arrangement made at the time of the cancellation. It was cancelled under the belief that it had been paid long before. If so, when, how, and by whom was it paid? It would naturally have been paid either by the mortgagor himself, or by the defendant, who

purchased the premises from the mortgagor. The defendant, by his answer, expressly admits that he never paid the mortgage debt, or any part of it, but alleges that he has been informed, and believes that the debt was paid, or secured to be paid, or in some other way arranged, satisfied, and discharged, either by the mortgagee, the mortgagor, or by some other person, but when or how the defendant has been unable to ascertain.

The bill charges that, at the time of the conveyance of the mortgaged premises to the defendant by the mortgagor, the mortgage was unpaid, and a lien upon the premises; and that the defendant assumed the payment of the debt, as a part of the consideration of the conveyance. This is expressly denied by the answer. The direct issue thus made by the pleadings is, whether the mortgage in controversy was a subsisting lien upon the mortgaged premises at the time they were conveyed to the defendant. If it was, we have his explicit acknowledgment that it has not since been paid.

The mortgaged premises were conveyed to the defendant on the seventeenth of November, 1856. The cancellation was made on the seventeenth of October, 1860. If the debt was paid before, or at the time of the conveyance, the bond and mortgage would then, in the usual course of business, have been delivered up and cancelled. But they remained in the hands of the complainant for four years afterwards in full force, unquestioned either by the obligor in the bond, or by the defendant, who owned the mortgaged premises. If paid, it must have been by the obligor, or with his knowledge. He has been examined. He is a brother of the defendant, and has no apparent motive to color or distort the evidence against him. He testifies that there were two mortgages on the property when he conveyed to the defendant. The first was a $300 mortgage, executed by his mother and himself, given in 1844· or 1845, and assigned by him, as the executor of the mortgagee, to the complainant. This is the mortgage in controversy. He distinctly admits that this mortgage was not paid, but that both mortgages were sub-

sisting encumbrances when he conveyed to the defendant. It is proved, moreover, by this witness and by John Wickham, that at the time of the sale of this property by the mortgagor to the defendant there was a meeting between them at the house of the complainant to settle the amount due to the complainant upon his two mortgages; that the amount was ascertained by calculation to be over $1200, and that a memorandum of the amount was made by the· defendant, ·and given to the complainant. That memorandum, in the handwriting of the defendant, is produced as an exhibit. It is as follows: "Made out by Thomas B. Vreeland—amount of both mortgages up to January 16th, 1857, is $1212.11.

The force of this evidence is attempted to be impaired by alleging that the evidence does not show that the papers were in the hands of Thomas B. Vreeland. Suppose they were not. The facts, as clearly proven, are that the mortgagor and the defendant, who was about to purchase, went to the house of the complainant to ascertain the amount due to the complainant upon the mortgages. There was no question as to their existence, and no pretence that either of them had been paid. The only question was, how much was due upon them. The papers were produced, the calculation of interest was made, the amount due ascertained, reduced to writing by the defendant himself, and given to the complainant. Whether the bond and mortgage was actually in the hands of the defendant was totally immaterial. It was in his presence open to examination. It was treated as a subsisting debt, both by the mortgagor, who was about to sell, and by the defendant, who was about to purchase and to assume the payment of the mortgage debt as a part of the consideration of the purchase.

It is certainly a remarkable circumstance, the effect of which can be overcome only by very clear evidence, that the complainant himself believed and acknowledged that the mortgage was satisfied, and assented to its cancellation. But the mistake, I think, is satisfactorily accounted for. He was an aged man, and manifestly very ignorant of business.

Banta *v.* Vreeland.

There had been a proposal, at one time, to take up the mortgage in question by giving another. He had held notes for a part of the indebtedness. He was under no mistake in regard to the amount due him. For that he relied upon the memorandum given to him by the defendant. At no time did he admit that the whole amount, as now claimed, was not due. His mistake was in regard to the securities which he held for the debt. He supposed that the entire debt was covered by the last mortgage or by notes. This is very clearly shown to be a mistake.

The sole question raised upon the pleadings and evidence is, whether the mortgage is a subsisting lien upon the mortgaged premises. The evidence upon this point leaves no room for doubt.

Equity will relieve where an instrument has been delivered up or cancelled through fraud or mistake. *Miller* v. *Wack, Saxton* 204; *Trenton Banking Company* v. *Woodruff*, 1 *Green's Ch. R.* 117; 1 *Story's Eq. Jur.*, § 167.

It is urged, on the part of the defendant, that to entitle a party to relief on the ground of mistake, it must be of such a fact as he could not by reasonable diligence have obtained knowledge of. If otherwise, it is culpable negligence, against which equity will not relieve. 1 *Story's Eq. Jur.*, § 146; *Deare* v. *Carr*, 2 *Green's Ch. R.* 513.

The principle is usually applied in relieving against contracts entered into under a mistake, though it is doubtless susceptible of a wider application. The present case, however, does not fall within the operation of the principle. The complainant received no consideration for the act—the defendant gave none. The complainant entered into no engagement from which he asks relief. Under a mistaken impression that the mortgage was satisfied, he consented to its cancellation. It is clearly against conscience that the defendant should avail himself of the mistake to escape the payment of an honest debt.

The complainant is entitled to a decree for the mortgage debt.