706 So.2d 881 (1998)
Arnold WOLF As Trustee U/T/D 9/2/94 F/B/O Arnold Wolf, Retirement Accounts, Inc. FBO Arnold Wolf IRA 90544, Disa Anhalt Tua DTD 3/23/92 Dis Anhalt Ttee, EJS Investment Company and City First Mortgage Corp., a Florida Corporation, Appellants,
v.
Marin SPARIOSU and Suyapa Baraha Spariosu, his wife, Maysonet Landscape, Co., Inc., and Unknown Tenants at 8500 S.W. 112th Street, Miami, FL., Appellees.
No. 97-929.
District Court of Appeal of Florida, Third District.
January 14, 1998.
Rehearing Denied April 1, 1998.
*882 Keith, Mack, LLP, and R. Hugh Lumpkin, and Karl J. Schumer, Miami, for appellants.
Homer & Bonner, P.A., and Blaine R. Young, Miami, for appellee, Maysonet Landscape Co., Inc.
Before JORGENSON, GERSTEN and GREEN, JJ.
GREEN, Judge.
Appellants (collectively "the Wolf Group"), plaintiffs below, appeal a final summary judgment of foreclosure which declared their lien upon the foreclosed property to be superior to the interests of all of the appellees/defendants except Maysonet Landscape Co., Inc.'s ("Maysonet") claim of lien. The Wolf Group asserts that through the doctrine of either equitable subrogation or conventional subrogation, their mortgage was entitled to priority over Maysonet's lien. We agree and reverse.
On July 28, 1994, Maysonet and the borrowers, appellees Marin Spariosu and Suyapa Baraha Spariosu, executed a contract for landscaping materials and services for the subject property. Upon the borrower's breach of this contract, Maysonet timely filed its claim of lien in the amount of $39,105.45 against the property. Maysonet's lien was duly recorded on September 8, 1995. At the time, there were two existing recorded mortgages on the borrower's property dated July 27, 1994 and March 13, 1995, respectively.
Thereafter, on September 14, 1995, the borrowers executed and delivered a note and mortgage to appellant, City First Mortgage Corp. ("City First"). This mortgage was recorded on September 28, 1995. According to City First's unrefuted affidavit of indebtedness, there were two prerequisites for its loan to the borrowers. First, the borrowers agreed that the proceeds from City First's loan were to be used specifically for the purpose of satisfying the two previously recorded mortgages on the borrower's property.[1] Second, the borrowers and City First agreed that City First's mortgage would be substituted in the place of these two prior mortgages. City First averred in the affidavit that it would not have consummated its loan transaction with the borrowers had they not agreed to these two requirements. City First's mortgage was subsequently assigned to the Wolf Group, a refinancing lender, and recorded on October 20, 1995.
Maysonet sued the borrowers on August 28, 1996 and recorded its notice of lis pendens on August 30, 1996. This suit was filed in another division of the Circuit Court of the Eleventh Judicial Circuit in and for Dade County, Florida. It was assigned case number XX-XXXXXX CA 01.
When the borrowers defaulted on the City First loan as assigned to the Wolf Group, the Wolf Group filed their complaint to foreclose the mortgage in the lower court on or about September 11, 1996. Although this complaint did not initially name Maysonet as a party defendant, the complaint was amended on December 4, 1996 to include Maysonet. Maysonet timely filed its answer and affirmative defenses.
The borrowers failed to file any answer in the foreclosure action below and the Wolf Group's motion for default against the borrowers was granted on February 10, 1997. The Wolf Group then moved for final summary judgment. The Wolf Group asserted at the hearing that its mortgage was entitled to priority over Maysonet's claim of lien on the basis of either equitable or conventional subrogation. Maysonet, however, countered that its claim of lien had priority under Florida's recording statute.[2]See Fla. Stat. *883 § 695.11 (1995). The lower court agreed with Maysonet and entered a final judgment of mortgage foreclosure finding the Wolf Group's interest to be superior to the interests of all defendants except Maysonet. This appeal followed.
The Wolf Group asserts that since the proceeds of its mortgage were used by the borrowers to satisfy existing mortgages recorded prior to Maysonet's lien, it should have been equitably subrogated to the position of these satisfied mortgages to maintain priority over Maysonet's lien. Alternatively, the Wolf Group argues that since its assignee, City First, had an express agreement with the borrowers that City First's mortgage would be subrogated to the rights of the borrower's prior existing mortgages, the Wolf Group as assignee is now entitled to this priority under the doctrine of conventional subrogation. Thus, the Wolf Group contends that the lower court erred in giving Maysonet's lien priority over its mortgage, under theories of either equitable or conventional subrogation. We agree and find that the Wolf Group's mortgage was entitled to priority over Maysonet's lien under the doctrine of conventional subrogation.
Generally speaking, subrogation is the "substitution of one person to the position of another with reference to a legal claim or right." Eastern National Bank v. Glendale Fed. Savs. and Loan Ass'n, 508 So.2d 1323, 1324 (Fla. 3d DCA 1987). "The doctrine of subrogation is generally invoked when one person has satisfied the obligations of another and equity compels that the person discharging the debt stand in the shoes of the person whose claim has been discharged, thereby succeeding to the rights and priorities of the original creditor." Id. In Eastern, we recognized two distinct categories of subrogation: equitable and conventional subrogation. See id.
We stated that equitable subrogation arises "when a person discharging the obligation [of another] is under a legal duty to do so or when the person discharges the obligation to protect an interest in, or a right to, the property." Id. Equitable subrogation "is not available to a mere volunteer or stranger who, without any duty or obligation to intervene and without being so requested, pays the debt of another." West American Insurance Co. v. Yellow Cab Co., 495 So.2d 204, 207 (Fla. 5th DCA 1986), review denied, 504 So.2d 769 (Fla.1987); see also Eastern, 508 So.2d at 1324.
"`Conventional subrogation[, however,] arises by virtue of an agreement, express or implied, that a third person or one having no previous interest in the matter involved shall, upon discharging an obligation or paying a debt, be substituted in the place of the creditor with respect to such rights, remedies, or securities as [the creditor] may have against the debtor.'" Forman v. First Nat'l Bank, 76 Fla. 48, 53, 79 So. 742, 744 (1918) (quoting Kent v. Bailey, 181 Iowa 489, 164 N.W. 852, 853 (1917)); see also Federal Land Bank v. Godwin, 107 Fla. 537, 549, 145 So. 883, 885 (1933); Lovingood v. Butler Constr., 100 Fla. 1252, 1267, 131 So. 126, 131 (1930); Eastern, 508 So.2d at 1325; but cf. Boley v. Daniel, 72 Fla. 121, 72 So. 644, 645 (1916) (subrogation rights did not exist absent agreement that first discharged mortgage was to be "kept alive" by payment). Thus, where a lender discharges a first mortgage pursuant to an agreement with the mortgagor that the lender be subrogated to the rights of the first mortgagee, Florida courts have recognized that the lender may, in order to prevent unjust enrichment, be subrogated to the rights of the first mortgagee, notwithstanding an intervening lien of which the lender is ignorantprovided no inequity or prejudice results. See Eastern, 508 So.2d at 1325; Southern Colonial Mortgage Co., Inc. v. Medeiros, 347 So.2d 736, 738 (Fla. 4th DCA 1977); Washington Security Co. v. Tracy's Plumbing & Pumps, Inc., 166 So.2d 680, 685 (Fla. 2d DCA 1964). The lender will not be denied its subrogated rights if the intervening lienholder's position is no different than it would have been had *884 the prior lien not been discharged by the lender. See Forman, 76 Fla. at 54-55, 79 So. at 744; Eastern, 508 So.2d at 1325; Southern Colonial Mortgage Co., 347 So.2d at 739.
In the instant case, we find that under the doctrine of conventional subrogation, the Wolf Group's lien should have been declared superior to Maysonet's lien, to the amount of the borrower's original satisfied mortgages. The undisputed record evidence before us reflects that the borrowers had an agreement with the Wolf Group's predecessor in interest, City First, for City First's mortgage to be substituted in the place of the two prior satisfied mortgages. Maysonet is not prejudiced and cannot be heard to complain, because its resultant position is no different than it would have been had the borrower's two prior recorded mortgages on the property not been satisfied with the proceeds from City First's loan.
Because we conclude that the Wolf Group's lien was entitled to priority over Maysonet's lien under the doctrine of conventional subrogation, it is not necessary for us to additionally consider whether the doctrine of equitable subrogation was equally applicable. See Eastern, 508 So.2d at 1325 ("[w]here the relative positions of the parties are clearly fixed by terms of contracts, and enforcement of the contracts will not prejudicially affect the rights of innocent persons or otherwise work an injustice, there is no need to resort to equity"). We therefore reverse the final judgment and remand with instructions that it be modified to reflect that the lien of the Wolf Group take priority over Maysonet's lien to the amount of the satisfied two prior mortgages on the property.
Reversed and remanded with instructions.
NOTES
[1] These prior mortgages were indeed satisfied with the proceeds from City First's loan.
[2] Section 695.11 (1995) provides:

Instruments deemed to be recorded from time of filing. All instruments which are authorized or required to be recorded in the office of the clerk of the circuit court of any county in the State of Florida, and which are to be recorded in the "Official Records" as provided for under s. 28.222, and which are filed for recording on or after the effective date of this act, shall be deemed to have been officially accepted by the said officer, and officially recorded, at the time he affixed thereon the consecutive official register numbers required under s. 28.222, and at such time shall be notice to all persons. The sequence of such official numbers shall determine the priority of recordation. An instrument bearing the lower number in the then current series of numbers shall have priority over any instrument bearing a higher number in the same series.