731 So.2d 638 (1999)
DADE COUNTY SCHOOL BOARD, Petitioner,
v.
RADIO STATION WQBA, City of Miami, Susquehanna Pfaltzgraff and Three Kings Parade, Inc., Respondents.
No. 91,767.
Supreme Court of Florida.
February 4, 1999.
Rehearing Denied May 13, 1999.
*640 Geralyn M. Passaro of Peters, Robertson, Parsons, Welcher, Mowers & Passaro, Ft. Lauderdale, Florida, for Petitioner.
John P. Joy and Kenneth L. Valentini of Walton, Lantaff, Schroeder & Carson, Ft. Lauderdale, Florida; and G. Bart Billbrough of Cole, White & Billbrough, P.A., Miami, Florida, for Respondents.

REVISED OPINION
HARDING, C.J.
We have for review Dade County School Board v. Radio Station WQBA, 699 So.2d 701 (Fla. 3d DCA 1997), which conflicts with the opinions in Arky, Freed, Stearns, Watson, Greer, Weaver & Harris, P.A. v. Bowmar Instrument Corp., 537 So.2d 561 (Fla.1988), and Dober v. Worrell, 401 So.2d 1322 (Fla.1981). We have jurisdiction pursuant to article V, section 3(b)(3) of the Florida Constitution.
The Dade County School Board (DCSB) appealed a final judgment requiring it to reimburse Three Kings Parade, Inc., Radio Station WQBA, Susquehanna Broadcasting Company, and the City of Miami (hereinafter referred to collectively as "Three Kings") for monies paid to settle various personal injury claims. The Third District Court of Appeal affirmed the judgment. We quash the decision of the district court and remand this case for further proceedings consistent with this opinion.
On January 7, 1990, the annual Three Kings Day Parade was held in Miami, Florida. Radio Station WQBA ran the parade as a promotional event. Participants in the parade were required to sign a "Participation Agreement"[1] containing an indemnification clause. This clause provided that participants would defend Three Kings and hold them harmless from any claims resulting from the parade.
In late 1989, a WQBA employee contacted John Moffi of the Office of Vocational, Adult, Career and Community Education (OVACCE) of Dade County Public Schools. Moffi purchased an advertising package that included radio promotional announcements and an OVACCE banner which was to be carried by one of the high school marching bands in the parade. Moffi signed the "Participation Agreement" which designated OVACCE the sponsor of the Miami Senior High School Band. The band was selected by Three Kings, and OVACCE expressed no preference as to which band they would sponsor.
As part of their routine, the majorettes in the Miami Senior High School marching band twirled flaming batons. Two students, Maria Lozano and Alfredo Sans, were chosen to assist the majorettes with the ignition of the batons. On the day of the parade, Lozano and Sans brought cans of flammable liquid through the parade entrance and past police and fire officials. On the parade route, a majorette's batons would not maintain a constant flame and had to be reignited. While being used to reignite the batons, a can of flammable liquid caught fire and fell to the ground. Sans kicked the can away from the students, but into the crowd of spectators. Several spectators were severely burned.
The injured spectators brought personal injury actions against Three Kings and DCSB. The claims against both Three Kings and DCSB alleged negligence *641 in permitting flammable materials to be used in a dangerous manner. Three Kings responded by claiming that DCSB was the sole cause of the injuries and filed cross-claims against DCSB for contractual and common law indemnity and for contribution.[2] Later, Three Kings filed a separate suit in the form of a declaratory judgment seeking DCSB's indemnification of Three Kings for all claims under the terms of the "Participation Agreement."
As a condition of allowing the Three Kings Day Parade, the City of Miami required Three Kings to carry liability insurance. The liability insurer for Three Kings settled with all of the injured plaintiffs.[3] DCSB settled separately with three of the injured plaintiffs.[4]
Prior to trial, Three Kings sought summary judgment against DCSB for reimbursement of the settlement monies based on the "Participation Agreement." The trial court entered summary judgment in favor of Three Kings on the issue of contractual indemnity. The trial court held that the "Participation Agreement" legally obligated DCSB to indemnify Three Kings for damages caused by the actions of the Miami Senior High School band. However, a trial would be required to determine percentages of fault.
The two parties went to trial on the issues of common law indemnity and fault on the contractual indemnity claim. The claim of equitable subrogation was not raised at trial. The jury found DCSB to be 90% negligent and Sans 10% negligent.[5] Additionally, in response to a special interrogatory, the jury found that there was no special relationship between DCSB and Three Kings.
Following the verdict, both parties moved for entry of judgment in their favor.[6] At a post-verdict hearing on the motions, Three Kings claimed under the doctrine of equitable subrogation as an alternative basis for recovery. This was the first time that Three Kings had argued equitable subrogation; the theory was not raised in the pleadings. The trial court entered an order denying all post-trial motions and entering final judgment for Three Kings in the amount of $2,035,000, representing 100% of the funds paid by Three Kings to the injured spectators, $59,391.50 in attorney's fees, and $15,000 in costs. The trial court denied Three Kings' motion for prejudgment interest.
DCSB appealed the entire adverse award and Three Kings cross-appealed for prejudgment interest. The Third District Court of Appeal affirmed the judgment of the trial court with the exception of the language "for which sum let execution issue" which permitted execution of the judgment against DCSB. The district court held that (1) common law indemnity was not available due to the jury's finding of no *642 special relationship and (2) Three Kings was entitled to relief under a theory of equitable subrogation despite the fact that the issue had not been raised until after the verdict. The district court did not discuss the issue of contractual indemnity.
This Court granted DCSB's petition for review on the basis of conflict with Arky, Freed and Dober. In Arky, Freed, this Court concluded that, at the outset of a suit, litigants must state their pleadings with sufficient particularity for a defense to be prepared. In Dober, this Court held that it was inappropriate to raise an affirmative defense for the first time on appeal from a summary judgment. Arky, Freed and Dober conflict with the ruling in Radio Station WQBA which allowed recovery based on the doctrine of equitable subrogation, a theory which was never pled and was raised for the first time post-verdict. This opinion resolves this conflict. Additionally, this opinion recognizes and resolves further conflict between the opinion below and the opinion of the Fifth District Court of Appeal in West American Insurance Co. v. Yellow Cab Co. of Orlando, Inc., 495 So.2d 204 (Fla. 5th DCA 1986), regarding the proper application of the doctrine of equitable subrogation. Cf. Jacobson v. State, 476 So.2d 1282, 1285 (Fla. 1985) ("Having jurisdiction, we have jurisdiction over all issues, Savoie v. State, 422 So.2d 308 (Fla.1982), and dispose of the case on a ground other than the conflict ground."). Finally, this opinion addresses all three theories of recovery which were raised by Three Kings in this case.

COMMON LAW INDEMNIFICATION
We agree with the district court that Three Kings cannot be successful on a claim of common law indemnity. For a party to prevail on a claim of common law indemnity, the party must satisfy a two-prong test. First, the party seeking indemnification must be without fault, and its liability must be vicarious and solely for the wrong of another. See K-Mart Corp. v. Chairs, Inc., 506 So.2d 7, 9-10 (Fla. 5th DCA 1987). Second, indemnification can only come from a party who was at fault. See Federal Ins. Co. v. Western Waterproofing Co., 500 So.2d 162, 165 (Fla. 1st DCA 1986); see also State Dep't of Transp. v. Southern Bell Tel. & Tel. Co., 635 So.2d 74, 77 (Fla. 1st DCA 1994). Additionally, Florida courts have required a special relationship between the parties in order for common law indemnification to exist. See Houdaille Indus., Inc. v. Edwards, 374 So.2d 490, 493 (Fla.1979).
Three Kings' claim of common law indemnification was presented to a jury. Contained on the verdict form was a special interrogatory which required the jury to answer the following question:
Whether a special relationship existed between Radio Station WQBA and City of Miami, as parade sponsors, and Dade County School Board, whereby the parade sponsors are technically, derivatively, or vicariously responsible for any negligence of Dade County School Board?
The jury answered the question in the negative. A review of the trial transcript does not expose a situation which would allow this Court to set aside this jury finding. See Wheeler v. Yellow Cab Co., 66 So.2d 501, 504 (Fla.1953) (stating that it is appropriate for an appellate court to set aside a jury verdict only when it is so contrary to the manifest weight of the evidence that the verdict must have been the result of sympathy, passion, prejudice, or mistake or reflects an arbitrary or capricious weighing of the evidence); Helman v. Seaboard Coast Line R.R. Co., 349 So.2d 1187, 1189-90 (Fla.1977). In finding that there was no special relationship between Three Kings and DCSB, the jury's verdict precludes Three Kings from recovery on a claim of common law indemnity.

CONTRACTUAL INDEMNIFICATION
At trial, Three Kings also sought recovery under the theory of contractual indemnification.[7] *643 Three Kings was granted summary judgment on the contractual indemnification claim and the jury was only to apportion liability. On appeal, the district court did not address the contractual indemnity claim. However, Judge Cope, in his dissent, correctly recognized that it was error for the trial court to grant summary judgment on the basis of the "Participation Agreement." See Dade County Sch. Bd. v. Radio Station WQBA, 699 So.2d 701, 712 (Fla. 3d DCA 1997) (Cope, J., dissenting).
It is a well-settled principle of Florida jurisprudence that summary judgment should not be granted unless the facts are so clear and undisputed that only questions of law remain. See Moore v. Morris, 475 So.2d 666, 668 (Fla.1985). It is the burden of the moving party to conclusively prove that no genuine issue of material fact exists. See id. Until the moving party conclusively establishes there is no genuine issue of material fact, the legal sufficiency of the evidence on the merits should not be addressed. See Holl v. Talcott, 191 So.2d 40, 43 (Fla.1966).
Summary judgment was granted to Three Kings on the basis of an indemnity clause in the "Participation Agreement." A contract for indemnity is an agreement by which the promisor agrees to protect the promisee against loss or damages by reason of liability to a third party. See Royal Indem. Co. v. Knott, 101 Fla. 1495, 1509, 136 So. 474, 479 (1931). Indemnity contracts are subject to the general rules of contractual construction; thus an indemnity contract must be construed based on the intentions of the parties. See University Plaza Shopping Ctr. v. Stewart, 272 So.2d 507, 511 (Fla.1973).
The pivotal issue in the contractual indemnification claim centers around language in the "Participation Agreement." DCSB argues that the language "our participation and actions" refers only to the advertising purchased by OVACCE and that Moffi did not have the authority to bind DCSB for the acts of the marching band. Three Kings argues "our participation and actions" refers to the marching band and that Moffi executed many agreements binding DCSB. Both parties argue that the "plain language" of the "Participation Agreement" should control and that each is entitled to prevail.
We conclude that on the issue of contractual indemnification, a disputed factual issue remains. The intent of the parties is not clear from the document, and the language "our participation and actions" is ambiguous. It is unclear whether "our" means OVACCE or the marching band. Because the terms of the agreement are ambiguous and the record does not contain sufficient evidence to resolve the dispute, summary judgment was improper. See Avera v. Provident Sec. Life Ins. Co., 512 So.2d 292, 294 (Fla. 1st DCA 1987); see also C R Mall, Inc. v. Sears, Roebuck & Co., 667 So.2d 1016, 1018 (Fla. 5th DCA 1996) (precluding the trial court from entering summary judgment on a contractual indemnity cross-claim when a latent ambiguity existed in the agreement, and the intent of the parties was in dispute); Scharlin v. Orange County, 669 So.2d 276, 279 (Fla. 5th DCA 1996) (recognizing that where a patent ambiguity existed in the terms of the agreement and conflicting testimony existed as to the intent of the parties, summary judgment on the issue was precluded); Fecteau v. Southeast Bank, N.A., 585 So.2d 1005, 1007 (Fla. 4th DCA 1991) (reasoning that when an ambiguity exists in a contract, and the parties suggest different interpretations, summary judgment is inappropriate because there is an issue of material fact).
Additionally, Three Kings sought to resolve the indemnity claim prior to a determination of liability. Although a party is *644 permitted to file a claim for indemnification prior to resolution of liability, summary judgment was premature. See Rea v. Barton Protective Servs., Inc., 660 So.2d 772, 773-74 (Fla. 4th DCA 1995) (holding that a summary judgment was entered prematurely in an indemnity cross-claim when liability had not yet been determined); see also Jerome Nagelbush, Inc. v. Frank J. Rooney, Inc., 342 So.2d 121, 122 (Fla. 3d DCA 1977); Mims Crane Serv., Inc. v. Insley Mfg. Corp., 226 So.2d 836, 842 (Fla. 2d DCA 1969). Therefore, we remand this case for further proceedings on this issue.

EQUITABLE SUBROGATION
Depending on the outcome of the contractual indemnification issue, the equitable subrogation issue may be moot. However, we address this issue for three reasons. First, if Three Kings fails on its contractual indemnification claim on remand, the trial court will need to address the equitable subrogation claim. Second, we resolve the conflict between the opinion below and Arky, Freed and Dober. Finally, we resolve the conflict between the opinion below and West American regarding the proper application of the equitable subrogation doctrine.
Three Kings did not state a claim for equitable subrogation in the pleadings at trial. The claim was raised for the first time at a post-verdict hearing on a motion for entry of final judgment. However, the district court based its affirmance of the trial court's judgment on the basis of equitable subrogation.
Generally, if a claim is not raised in the trial court, it will not be considered on appeal. See Arky, Freed, 537 So.2d at 563 (denying recovery on a claim not pled with sufficient particularity for a defense to be prepared); see also Dober v. Worrell, 401 So.2d at 1324. In Dober, this Court quashed a district court's decision to allow a party to prevail on issues not framed by the pleadings. In Dober, Justice Overton adamantly professed this Court's displeasure with the idea that a claim could be successfully raised at the appellate level:
It is our view that a procedure which allows an appellate court to rule on the merits of a trial court judgment and then permits the losing party to amend his initial pleadings to assert matters not previously raised renders a mockery of the "finality" concept in our system of justice. Clearly, this procedure would substantially extend litigation, expand its costs, and, if allowed, would emasculate summary judgment procedure.
Id. at 1324.
Thus, it appears that the decision of the district court is in conflict with this Court's decisions in Arky, Freed and Dober. However, this conflict is resolved upon consideration of the exception to the general rule of Arky, Freed and Dober. In some circumstances, even though a trial court's ruling is based on improper reasoning, the ruling will be upheld if there is any theory or principle of law in the record which would support the ruling. In In re Estate of Yohn, this Court stated:
It is elementary that the theories or reasons assigned by the lower court as its basis for the order or judgment appealed from, although sometimes helpful, are not in any way controlling on appeal and the Appellate Court will make its own determination as to the correctness of the decision of the lower court, regardless of the reasons or theories assigned therefor.
238 So.2d 290, 295 (Fla.1970). Stated another way, if a trial court reaches the right result, but for the wrong reasons, it will be upheld if there is any basis which would support the judgment in the record. This Court has adhered to this principle on many other occasions. See, e.g., Applegate v. Barnett Bank, 377 So.2d 1150, 1152 (Fla.1979) ("The written final judgment by the trial court could well be wrong in its reasoning, but the decision of the trial court is primarily what matters, not the reasoning used. Even when based on erroneous *645 reasoning, a conclusion or decision of a trial court will generally be affirmed if the evidence or an alternative theory supports it."); Firestone v. Firestone, 263 So.2d 223, 225 (Fla.1972) ("[T]he findings of the lower court are not necessarily binding and controlling on appeal, and if these findings are grounded on an erroneous theory, the judgment may yet be affirmed where appellate review discloses other theories to support it."); Direct Oil Corp. v. Brown, 178 So.2d 13, 15 (Fla.1965); Cohen v. Mohawk, Inc., 137 So.2d 222, 225 (Fla. 1962) ("[T]he judgment of the trial court reached the district court clothed with a presumption in favor of its validity. Accordingly, if upon the pleadings and evidence before the trial court, there was any theory or principle of law which would support the trial court's judgment in favor of the plaintiffs, the district court was obliged to affirm that judgment."); Chase v. Cowart, 102 So.2d 147, 150 (Fla.1958). Many other courts have also followed this principle. See, e.g., Green v. First American Bank & Trust, 511 So.2d 569, 573 (Fla. 4th DCA 1987); Poller v. First Va. Mortgage & Real Estate Inv. Trust, 471 So.2d 104, 107 (Fla. 3d DCA 1985); Wassil v. Gilmour, 465 So.2d 566, 567 n. 2 (Fla. 3d DCA 1985); McPhee v. Dade County, 362 So.2d 74, 80 (Fla. 3d DCA 1978); Board of County Comm'rs v. Lowas, 348 So.2d 13, 16 n. 5 (Fla. 3d DCA 1977); First Nat'l Bank v. Morse, 248 So.2d 658, 659 (Fla. 2d DCA 1971). The Fourth District Court of Appeal has referred to this principle as the "tipsy coachman" rule. See Home Depot U.S.A. Co. v. Taylor, 676 So.2d 479, 480 (Fla. 5th DCA 1996).[8]
If an appellate court, in considering whether to uphold or overturn a lower court's judgment, is not limited to consideration of the reasons given by the trial court but rather must affirm the judgment if it is legally correct regardless of those reasons, it follows that an appellee, in arguing for the affirmance of a judgment, is not limited to legal arguments expressly asserted as grounds for the judgment in the court below. It stands to reason that the appellee can present any argument supported by the record even if not expressly asserted in the lower court. See MacNeill v. O'Neal, 238 So.2d 614, 615 (Fla.1970). In MacNeill, this Court cited prior cases holding that an appellee "not aggrieved by the lower court's decision need not file cross-assignments of error in order to have the points considered on appeal." See Cerniglia v. C & D Farms, Inc., 203 So.2d 1 (Fla.1967); Hall v. Florida Bd. of Pharmacy, 177 So.2d 833 (Fla. 1965). "These cases recognize that a party who is content with the judgment below need not assign error in order to support that judgment and is not limited in the appellate courts to the theories of recovery stated by the trial court." MacNeill, 238 So.2d at 615. While the Rules of Appellate Procedure no longer provide for assignments of error, what the MacNeill court said is analogous to saying that an appellee need not raise and preserve alternative grounds for the lower court's judgment in order to assert them in defense when the appellant attacks the judgment on appeal.
In the present case, it appears that the district court applied the "tipsy coachman rule." The district court affirmed the trial court's ruling, even though the ruling may have been based on improper reasoning.[9] *646 The district court concluded that the judgment could not be affirmed based on the common law indemnity claim. Nevertheless, the district court found that the trial court still reached the right result, relying instead on the doctrine of equitable subrogation.
We disagree with the district court's liberal application of the equitable subrogation doctrine. We find that the district court's decision below is conflict with the Fifth District Court of Appeal's decision in West American Insurance Co. v. Yellow Cab Co. of Orlando, Inc., 495 So.2d 204 (Fla. 5th DCA 1986), regarding the proper application of the doctrine of equitable subrogation.
Florida recognizes two types of subrogation: conventional subrogation and equitable or legal subrogation. Conventional subrogation arises or flows from a contract between the parties establishing an agreement that the party paying the debt will have the rights and remedies of the original creditor. See Boley v. Daniel, 72 Fla. 121, 123, 72 So. 644, 645 (1916) (finding that conventional subrogation arises when a party having no interest in the matter pays the debt of another and by agreement is entitled to the rights and securities of the creditor who has been paid); see also Phoenix Ins. Co. v. Florida Farm Bureau Mut. Ins. Co., 558 So.2d 1048, 1050 (Fla. 2d DCA 1990).
The doctrine of equitable subrogation is not created by a contract, but by the legal consequences of the acts and relationships of the parties. See Dantzler Lumber & Export Co. v. Columbia Cas. Co., 115 Fla. 541, 551, 156 So. 116, 120 (1934). Equitable subrogation is generally appropriate where: (1) the subrogee made the payment to protect his or her own interest, (2) the subrogee did not act as a volunteer, (3) the subrogee was not primarily liable for the debt, (4) the subrogee paid off the entire debt, and (5) subrogation would not work any injustice to the rights of a third party. See Fowler v. Lee, 106 Fla. 712, 714-15, 143 So. 613, 614 (1932); Eastern Nat'l Bank v. Glendale Fed. Sav. & Loan Ass'n, 508 So.2d 1323, 1324-25 (Fla. 3d DCA 1987). As a result of equitable subrogation, the party discharging the debt stands in the shoes of the person whose claims have been discharged and thus succeeds to the right and priorities of the original creditor. See Eastern Nat'l Bank, 508 So.2d at 1324.
West American involves the prototypical case to which application of equitable subrogation in a tort context should be limited. West American's insured was involved in an automobile accident with a cab owned by the Yellow Cab Company. The insured sued both West American and Yellow Cab. West American was successful in negotiating a settlement with its insured and secured a release of all claims against itself and Yellow Cab. West American then filed a contribution claim against Yellow Cab to recover the settlement monies paid to its insured. Because a jury determined Yellow Cab to be one hundred percent at fault, the district court concluded that West American was not a joint tortfeasor and therefore it could not sue Yellow Cab under section 768.31, Florida Statutes (1985). In allowing West American to recover on the alternative basis of equitable subrogation, the district court concluded that West American "paid a debt in full which in equity should have been paid by Yellow Cab." West American, 495 So.2d at 207. In analyzing the issue presented, the district court aptly explained the difference between conventional and equitable subrogation:
Subrogation is the substitution of one person in the place of another with reference to a lawful claim or right. Subrogation arises by operation of law, where one having a liability or a right or *647 a fiduciary relation in the premises pays a debt due by another under such circumstances that he is, in equity, entitled to the security or obligation held by the creditor whom he has paid. This is called "legal subrogation." Conventional subrogation depends upon a lawful contract, and occurs where one having no interest in or relation to the matter pays the debt of another, and by agreement is entitled to the securities and rights of the creditor so paid.
Id. at 206-07 (quoting Boley v. Daniel, 72 Fla. at 123, 72 So. at 645). The court went on to state:
Subrogation in equity is not available to a mere volunteer or stranger who, without any duty or obligation to intervene and without being so requested, pays the debt of another. The right of subrogation is not necessarily confined to those who are legally bound to make payments, but extends as well to persons who pay the debt in self protection, since they might suffer loss if the obligation is not discharged. In the face of the lawsuit in which it was named as a defendant, West American was not a volunteer but settled with the injured passenger to protect its own interests.
Id. at 207 (citations omitted). Central to the court's application of equitable subrogation was the fact that West American secured a release which included Yellow Cab and that West American paid one hundred percent of the debt.
Moreover, under equitable subrogation, "the person discharging the debt stand[s] in the shoes of the person whose claim has been discharged, thereby succeeding to the rights and priorities of the original creditor." Eastern Nat'l Bank v. Glendale Fed. Sav. & Loan Ass'n, 508 So.2d 1323, 1324 (Fla. 3d DCA 1987); see also Cleary Bros. Constr. Co. v. Upper Keys Marine Constr., Inc., 526 So.2d 116, 116-17 (Fla. 3d DCA 1988) ("In subrogation, the subrogee, now in the same posture as the plaintiff/subrogor, acquires all rights as against the defendant/wrongdoer and is thus able to bring an action against that party to recover the monies paid."). From this premise, it logically follows that if the subrogor has no rights or priorities against a specified third party, then the subrogee has nothing to inherit as against that third party.
In the present case, equitable subrogation would only be proper if it can be established that Three Kings paid the entire debt owed to a particular plaintiff and that in doing so, Three Kings obtained a release for DCSB from the plaintiff. Further, upon discharging the debt, Three Kings would step into the shoes of the particular plaintiff and acquire the rights and priorities that the plaintiff has against DCSB. Of course, if DCSB settled its claims with any of the plaintiffs and secured a release of liability, such a release would be an affirmative defense to the equitable subrogation claim. This is an issue for the trial court to decide, if such a determination becomes necessary.

CONCLUSION
For the reasons expressed above, we approve that part of the decision below which recognized that the claim for common law indemnity was defeated by the jury's finding of no special relationship between the parties. We remand this case for further proceedings on the issue of contractual indemnification.[10] If Three Kings is not successful on its contractual indemnification claim, then the trial judge shall apply the equitable subrogation doctrine consistent with West American and this opinion.
It is so ordered.
SHAW, WELLS and PARIENTE, JJ., and OVERTON, Senior Justice, concur.
*648 ANSTEAD, J., recused.

APPENDIX

Super Q fm 107.5

THREE KINGS DAY PARADE

PARTICIPATION AGREEMENT
The undersigned agrees, as condition to participate in the 19th Annual Three Kings' Day Parade, Sunday, January 8, 1990, to:
1. OBEY ALL INSTRUCTIONS GIVEN BY PARADE OFFICIALS, MARSHALLS, AND THE MIAMI POLICE.
2. NOT THROW, HAND OUT, OR IN ANY OTHER WAY DISTRIBUTE ANY MATERIAL DURING THE PARADE.
3. USE THE SIGNS PROVIDED BY THE PARADE ORGANIZING COMMITTEE FOR IDENTIFICATION PURPOSES.
4. BE AT THE ASSEMBLY POINT DESIGNATED FOR OUR UNIT NO LATER THAN 11:00 AM ON SUNDAY, JANUARY 7, 1990.
We understand and agree that if we do not comply with the rules of the parade, and the instructions given to us by parade marshalls, officials, or the Miami Police, our participation in the parade will be terminated and we will not be permitted to continue in the parade.
Furthermore, we agree to defend and hold harmless the Parade Organizing Committee, WQBA Radio Station, and the City of Miami from any claim resulting from our participation and actions during the Three Kings' Day Parade.
AGREED: /s/ John C. Moffi
 ______________________________
TITLE Educational Specialist
 ______________________________
Dade County Public Schools (OVACCE)
NAME OF COMPANY
1450 NE 2nd Ave # 868 995-1822
_________________________________________
ADDRESS OF COMPANY TELEPHONE
Band Marching (Miami High Sr.)
_________________________________________
_________________________________________
Sponsorship
_________________________________________
PARTICIPATION APPROVAL
ORGANIZING COMMITTEE
_________________________________________
DATE SUBMITTED
_________________________________________
DATE APPROVED
 Parada de los Reyes Magos
 WQBA-FM
NOTES
[1] See appendix for copy of agreement.
[2] The claim of contribution is not an issue in this case. Contribution is only available to joint tortfeasors. See Sol Walker & Co. v. Seaboard Coast Line R.R. Co., 362 So.2d 45, 50-53 (Fla. 2d DCA 1978); see also § 763.81, Fla. Stat. (1995) (Uniform Contribution Among Tortfeasors Act). Because DCSB was 100% liable for the injuries to the spectators, the parties were not joint tortfeasors; therefore contribution is not an available option. See McKenzie Tank Lines, Inc. v. Empire Gas Corp., 538 So.2d 482, 484 (Fla. 1st DCA 1989) (finding that contribution will fail when the party against whom contribution is sought is found 100% liable for the injuries).
[3] Three Kings settled with Mayda Gonzalez for $1,500,000; Ricardo Gonzalez for $400,000; and Lazara Noda for $90,000. In addition, Three Kings settled pre-suit with Arnaldo Martinez for $25,000 and Sergio Perez for $20,000.
[4] DCSB settled with plaintiffs Mayda Gonzalez for $350,000; Ricardo Gonzalez for $225,000; and Lazara Noda for $25,000.
[5] The jury found that DCSB was responsible for the actions of Sans, so DCSB was 100% liable and Three Kings was absolved of all negligence.
[6] Three Kings argued that since DCSB was found 100% liable, it was entitled to reimbursement of all monies paid. DCSB argued that because the jury found no special relationship, indemnity was not available as a matter of law.
[7] Three Kings concedes that it is not seeking indemnification for its own negligent acts, but for the negligent acts of DCSB.
[8] In Taylor, the district court stated:

There is a rule used by courts of appeal which is called the "tipsy coachman" rule. It comes to us from Georgia, Lee v. Porter, 63 Ga. 345, by the way of our supreme court in Carraway v. Armour & Co., 156 So.2d 494 (Fla.1963).
The pupil of impulse, it fore'd [sic] him along,
His conduct still right, with his argument wrong;
Still aiming at honour, yet fearing to roam,
The coachman was tipsy, the chariot drove home.
Home Depot U.S.A. Co. v. Taylor, 676 So.2d 479, 480 (Fla. 5th DCA 1996).
[9] The trial court's final judgment does not state which theory Three Kings prevailed on. Presumably, the judgment was based on in-demnification, as equitable subrogation was raised for the first time post-verdict.
[10] The parties have raised issues relating to prejudgment interest, the statutory cap and noncompliance with the notice provision of section 768.28(6)(a), Florida Statutes (1997). All of these issues are attached to the money judgment. Because we are remanding this case, a ruling on these issues is premature.