742 So.2d 328 (1999)
NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PENNSYLVANIA, a Pennsylvania corporation, in its own right and as Assignee and Subrogee of BankAtlantic, a Federal Savings Bank, Appellant,
v.
KPMG PEAT MARWICK f/k/a Peat Marwick & Main Co., a general partnership, Appellee.
No. 98-3051.
District Court of Appeal of Florida, Third District.
July 28, 1999.
*329 Kimbrell & Hamann and James F. Crowder, Jr. and Russell A. Yagel, Miami, for appellant.
Gilbride, Heller & Brown and Lewis Brown and Dyanne E. Feinberg, Miami, for appellee.
Before NESBITT, SHEVIN, and SORONDO, JJ.
NESBITT, J.
National Union Fire Insurance Company (hereinafter National Union) was the fidelity bond insurer of BankAtlantic from May of 1989 through May of 1992. The contract between National Union and BankAtlantic provided that National Union would be subrogee to any claim it paid on BankAtlantic's behalf. Thereafter, BankAtlantic made a claim against National Union in reference to a portfolio of loans BankAtlantic purchased from Sterling Resources Ltd. National Union and BankAtlantic settled a portion of the claim and National Union paid BankAtlantic $18,000,000 for losses incurred.
National Union then filed a number of amended complaints against independent auditor KPMG for professional malpractice. The insurer alleged that accounting firm KPMG Peat Marwick (hereinafter KPMG) were the independent auditors of BankAtlantic, that KPMG was negligent in the performance of three of the independent audits of the bank in not discovering the activities leading to the losses, and that such negligence caused all or some of the *330 loss for which National Union paid BankAtlantic. As part of the National Union/ BankAtlantic settlement, BankAtlantic assigned to National Union any and all claims it had against KPMG for negligence in the performance of the audits. KPMG moved for judgment on the pleadings asserting National Union was not entitled to relief against KPMG as an assignee, contractual subrogee, or equitable subrogee. The trial court granted the motion and entered judgment for KPMG.
On the following analysis we reverse the trial court's order on each of the three claims made. The prohibition against the assignment of personal claims did not bar the instant claim by an insurer against its insured's independent auditor. As per the terms of the insured's agreement with its insurer, providing for subrogation, there is no legal bar to the insurer's action against the independent auditor for contractual subrogation. The insurer could be equitably subrogated to the rights of its insured's independent auditors where the claim was that the auditor's negligence contributed to the loss ultimately paid by the insurer. Finally, we certify the question posed which, in sum, is whether Dantzler Lumber & Export Co. v. Columbia Cas. Co., 115 Fla. 541, 156 So. 116 (1934) permits a claim of an independent auditor's professional malpractice to be asserted by an insurer/assignee and/or insurer/subrogee.

Assignment
The accountant-client privilege, unlike the attorney-client privilege, is not recognized at common law. See Falsone v. United States, 205 F.2d 734, 739 (5th Cir. 1953); Rubin v. Katz, 347 F.Supp. 322, 324 (E.D.Pa.1972) (asserting narrow construction of accountant-client privilege statutes because they are in derogation of common law); McNair v. Eighth J. Dist. Ct., 110 Nev. 1285, 885 P.2d 576, 578 (1994). A cause of action, which is not based on a personal tort such as malpractice, may be assigned. See Aaron v. Allstate Ins. Co., 559 So.2d 275 (Fla. 4th DCA 1990). Florida law views legal malpractice as a personal tort which cannot be assigned because of "the personal nature of legal services which involve highly confidential relationships." Forgione v. Dennis Pirtle Agency, Inc., 701 So.2d 557, 559 (Fla.1997), (citing Washington v. Fireman's Fund Ins. Co., 459 So.2d 1148, 1149 (Fla. 4th DCA 1984)). It is "the unique quality of legal services, the personal nature of attorney's duty to the client, and the confidentiality of the attorney-client relationship" that have led other courts to conclude that legal malpractice claims are not subject to assignment. Forgione, 701 So.2d at 559. Yet, there is no prohibition to the assignment of a claim, where there is no close, personal and highly confidential relationship. See Id. at 560. (Court held that claims against an insurance agent by the insured are assignable).
The United States Supreme Court stated, "by certifying the public reports that collectively depict a corporation's financial status, the independent auditor assumes a public responsibility transcending any employment relationship with the client." United States v. Arthur Young & Co., 465 U.S. 805, 104 S.Ct. 1495, 79 L.Ed.2d 826 (1984). Moreover, the Florida Supreme Court expanded accountants' liability to persons not in privity, establishing that the duties of an independent auditor extend beyond that of the client. See First Florida Bank v. Max Mitchell & Co., 558 So.2d 9, 15 (Fla.1990). Recognizing accountant-client privilege would be inconsistent with the duties of an independent auditor, the Supreme Court in United States v. Arthur Young & Co., 465 U.S. 805, 816-18, 104 S.Ct. 1495, 79 L.Ed.2d 826(1984) observed:
Nor do we find persuasive the argument that a work-product immunity for accountants' tax accrual workpapers is a fitting analogue to the attorney workproduct doctrine established in Hickman v. Taylor, supra. The Hickman work-product doctrine was founded upon the private attorney's role as the *331 client's confidential advisor and advocate, a loyal representative whose duty it is to present the client's case in the most favorable possible light. An independent certified public accountant performs a different role. By certifying the public reports that collectively depict a corporation's financial status, the independent auditor assumes a public responsibility transcending any employment relationship with the client. The independent public accountant performing this special function owes ultimate allegiance to the corporation's creditors and stockholders, as well as to investing public. This "public watchdog" function demands that the accountant maintain total independence from the client at all times and requires complete fidelity to the public trust.
Therefore, because accounting malpractice claims differ in a number of crucial ways from legal malpractice claims, we have no difficulty in concluding that the former should not be prohibited from assignment and that the insured's claim in this case was an assignable claim.
Supporting this decision is First Community Bank & Trust v. Kelley, Hardesty, Smith & Co., 663 N.E.2d 218, 223 (Ind.Ct. App.1996). In that case, the Indiana court held that a bank could assign a malpractice claim against accountants who audited bank, for failure to prevent or discover that bank employee was committing defalcations in connection with consumer loans, to directors who purchased bank's nonperforming loans. First Community Bank observed that the accountant-client privilege was purely statutory and, therefore, limited. Evidentiary privileges are generally looked on with disfavor, and privileges such as accountant-client privilege, which were unknown at common law, are particularly disfavored, and strictly construed to limit their application. In First Community Bank the assignee was the purchaser of the business. In our case the assignee is the insurer of the business, however we see no reason for this distinction to lead to a different result. The need to preserve the sanctity of the client-lawyer relationship, and the disreputable public role reversal that would result during the trial of assigned malpractice claims is simply not present in the instant case.
As First Community Bank observes, an attorney cannot be a zealous advocate for his client if he reveals confidential information about the client. It is only when an attorney becomes an adversary of the client via a malpractice claim that the attorney may suspend his duty of zealous advocacy and may avoid his duty of confidentiality, and then only to the extent necessary to reasonably defend himself in the action. The accountant, on the other hand, has no duty of confidentiality rooted in a duty to be a zealous advocate. The accountant's duty of confidentiality is based solely on the intrinsic value of confidentiality to the client.
Further buttressing our analysis is our Supreme Court's decision in Dantzler Lumber & Export Co. v. Columbia Cas. Co., 115 Fla. 541, 156 So. 116 (1934). In Dantzler the court concluded that an insurer's subrogation claim could proceed against the insured's accountants. If a subrogation claim may proceed, we take this as persuasive that an assignment claim may likewise proceed. This reliance on Dantzler for both our conclusion on the issue of assignment and subrogation and appellee's insistence that Dantzler no longer represents Florida law in light of Forgione, prompts us to certify the question of whether Dantzler is still good law.

Subrogation
As just observed, the case that directly controls the issue of subrogation is Dantzler Lumber and Export Co. v. Columbia Cas. Co., 115 Fla. 541, 156 So. 116 (1934). The Dantzler court held that a fidelity insurer could make a claim as the subrogee of the insured against the insured's accountants for failure to discover defalcations during an audit. See Western Surety Company v. Loy, 3 Kan.App.2d 310, 594 P.2d 257 (1979)(A surety may be *332 subrogated to creditor's right of action against public accountants who by negligently conducting an audit fail to discover defalcations.) See also 16 George J. Couch, Couch on Insurance (2d rev. ed.) § 61:294 (1983)(footnotes omitted)(concluding [t]he insurer indemnifying the employer for the employee's defalcations is subrogated to the employer's right to sue public accountants for negligence in failing to discover earlier defalcations.) We have observed that subrogation is the substitution of one person to the position of another with reference to legal claim or rank. See Wolf v. Spariosu, 706 So.2d 881, 883 (Fla. 3d DCA 1998) (citing Eastern Nat'l Bank v. Glendale Fed. Sav. and Loan Ass'n, 508 So.2d 1323 (Fla. 3d DCA 1987)). Florida recognizes two types of subrogation: conventional and equitable. Conventional subrogation is based on an agreement between the parties that the party paying the debt will be subrogated to the rights of the original creditor. See Eastern Nat'l Bank, 508 So.2d at 1325. It arises when a party "having no interest in or relation to the matter pays the debt of another, and by agreement is entitled to the securities and rights of the creditor so paid." Id.
Here, KPMG argues that National Union is barred from conventional subrogation because it has an interest in, and relation to, this matter, by the money it paid and now seeks to recover. However as stated in Casualty Indemnity Exchange v. Penrod Bros., Inc., 632 So.2d 1046, 1047 (Fla. 3d DCA 1993) (citations omitted) "After payment of a loss to its insured, an insurer may be subrogated to `any right of action that the insured may have against the third person whose negligence or wrongful act caused the loss.'" Therefore, the fact that National Union is BankAtlantic's insurer and a settlement payment was made, does not create an interest which would bar the recovery sought.
Moreover, an insurer's subrogation right may be expressly provided for by a clause that is included either in the applicable insurance policy or in a settlement agreement with an insured, which is referred to as conventional subrogation. 1 Eric Mills Holmes & Mark S. Rhodes, Holmes's Appleman of Insurance § 3.1 (2d ed.1996). The clause provided in the bond between National Union and BankAtlantic states that, "[i]n the event of payment under this bond the Underwriter shall be subrogated to all of the insured's rights of recovery." Therefore, because National Union paid BankAtlantic's debt, National Union is entitled to make a claim against KPMG as a conventional subrogee.
Further, equitable subrogation arises when the person discharging the obligation is under a legal duty to do so or when the person discharges the obligation to protect an interest in, or a right to, the property. Wolf, 706 So.2d at 883, (citing Eastern Nat'l Bank, 508 So.2d at 1324). The Florida Supreme Court recently explained that equitable subrogation is generally appropriate where: (1) the subrogee made the payment to protect his or her own interest, (2) the subrogee did not act as a volunteer, (3) the subrogee was not primarily liable for the debt,(4) the subrogee paid off the entire debt, and (5) subrogation would not work any injustice to the rights of a third party. See Dade County School Board v. Radio Station WQBA, 731 So.2d 638 (Fla.1999). The right to subrogation is not absolute, but depends upon the equities and attending facts of each case. See Dixie Nat'l Bank v. Employers Commercial Union Ins. Co., 463 So.2d 1147 (Fla.1985), conformed, 759 F.2d 826 (11th Cir.1985). The right to recover from a third person is conditional on whether or not the right of the one seeking subrogation is superior to the equities of those against whom the right is sought to be enforced. See Ruwitch v. First Nat'l Bank of Miami, 291 So.2d 650, 653 (Fla. 3d DCA 1974).
In Dixie, 463 So.2d at 1152, the Florida Supreme Court held that a fidelity insurer's status as a paid surety created superior equities, not in its own favor, but rather in favor of the insured's directors and their *333 insurer. The Court explained that a fidelity bond insurer assumes the risk that a bank will negligently fail to discover the wrongdoing of an employee, therefore the balance of the equities dictates that an insurer should not be permitted to sue the officers and directors of that bank for negligence. Id.
However, in the instant case, the equities must be balanced between the insurer and a third party, the independent auditors, where there is a claim of negligence. A New York case addressed the same argument and held that the superior equities doctrine favored a surety insurer being subrogated to the rights of the insured to proceed against the insured's accountants for negligence. See Federal Insurance Co. v. Arthur Andersen & Co., 75 N.Y.2d 366, 553 N.Y.S.2d 291, 552 N.E.2d 870 (1990). It is entirely fair and logical that insurer National Union might prove itself to have superior equities over KPMG, because otherwise KPMG would escape financial responsibility for its negligent auditing. Therefore, National Union can make a claim against KPMG as an equitable subrogee.

Conclusion
Accordingly, on all three claims we believe the trial court erred in dismissing National Union's action. By the terms of the insurance agreement National Union had the right to proceed as assignee and conventional subrogee. Furthermore, a trial court hearing the claim might conclude the insurer possessed the superior equities in the action, and find liability in the insurer's favor as an equitable subrogee.
Reversed and remanded.