SALTER, J.
The Shermans appeal a final circuit court judgment ruling that the appellee, mortgage holder Deutsche Bank National Trust Company, was entitled to a priority lien (by virtue of equitable subrogation) ahead of the lien of the Shermans’ duly- and previously-recorded mortgage. Finding insufficient record support for the application of the doctrine of equitable sub-rogation — as in the case of Velazquez v. Serrano, 43 So.3d 82 (Fla. 3d DCA 2010), also involving Deutsche Bank — we reverse and remand the case for further proceedings.

Facts and Procedural Background

In 2005, the owner of a residential property in Miami-Dade County refinanced it with a thirty-year adjustable-rate loan from Fremont Investment & Loan. The mortgage was duly recorded in September 2005. Fremont obtained a first-priority mortgage lien for the $688,000 principal amount of the loan.
In 2006, the homeowner gave a two-year second-position balloon mortgage on the residence to the Shermans to secure a loan of $100,000. That mortgage was duly recorded in May 2006 and expressly provided that it was a second mortgage, inferior to the Fremont mortgage “in the original principal amount of $688,000.” The second mortgage included a “due-on-sale” provision and a prohibition on assumption of the mortgage debt by others, but it did not provide for an acceleration of maturity in the event of a refinancing (a so-called “due-on-refinancing” provision).
In September 2006, the homeowner refinanced with Washington Mutual Bank (WaMu), predecessor in interest to Deutsche Bank. The new note and mortgage were for the principal sum of $900,000, an amount sufficient to satisfy the $726,940 first mortgage payoff amount claimed by Fremont (this figure included a prepayment penalty of $24,565), the $101,192 second mortgage payoff claimed by the Shermans ($100,000 in principal plus accrued interest), and the closing costs. WaMu’s closing agent paid off the Fremont first mortgage loan (and thereafter Fremont recorded a satisfaction of that first mortgage), but did not pay off the Shermans’ second mortgage loan. Instead, the closing agent disbursed over $129,000 in closing proceeds to the homeowner, and the homeowner did not pay off the Shermans’ loan. WaMu recorded its mortgage in early October 2006, but as a matter of record priority, the new WaMu mortgage was junior to the existing Sherman second mortgage.[1] The WaMu mortgage ultimately was acquired by Deutsche Bank.
*97 Thereafter, the homeowner defaulted on both mortgages, and Deutsche Bank (as trustee for a securitized pool of mortgage loans) commenced a foreclosure action. The Shermans denied, and asserted affirmative defenses against, Deutsche Bank’s claim for an equitable lien to the extent of funds advanced in 2006 to pay off the 2005 Fremont loan and to pay certain insurance and property tax obligations on the property. The Shermans also cross-claimed for foreclosure of their mortgage against the homeowner and counterclaimed to enforce the record priority of their mortgage over the Deutsche Bank mortgage.
The case proceeded to non-jury trial in April 2011. The homeowner stipulated to a final judgment of foreclosure regarding the Deutsche Bank mortgage. In June 2011, the trial court entered a final judgment granting Deutsche Bank a first-priority equitable lien, senior in dignity to that of the Shermans, for $726,940 disbursed by WaMu to pay off the 2005 Fremont loan, approximately $300,618 in accrued interest on that amount, plus over $56,300 in insurance and escrow disbursements, and less $88,640 in payments received on the mortgage. The adjusted Deutsche Bank equitable lien amount was $998,552.[2] The Shermans’ mortgage lien was to be junior to the equitably subrogat-ed, leapfrogged Deutsche Bank hen. This appeal ensued.

Analysis

In Velazquez v. Serrano, 43 So.3d 82 (Fla. 3d DCA 2010), we summarized the limitations applicable to equitable subrogation:
Subrogation “is not allowed if it works any injustice to the rights of others.” Fed. Land Bank of Columbia v. Godwin, 107 Fla. 537, 145 So. 883, 885 (1933); see also Brannon v. Hills, 111 Fla. 491, 149 So. 556, 557 (1933); Eastern Nat’l Bank v. Glendale Fed. Sav. & Loan Ass’n, 508 So.2d 1323 (Fla. 3d DCA 1987). A party’s entitlement to subrogation therefore “depends upon the equities and attending facts of each case.” Nat’l Union Fire Ins. Co. of Pittsburgh, Pa. v. KPMG Peat Marwick, 742 So.2d 328, 332 (Fla. 3d DCA 1999).
We also addressed in Velazquez the type of “harm” to a junior mortgagee that will preclude the application of the equitable subrogation doctrine. In that case, as here, Deutsche Bank’s predecessor mortgagee provided purchase money financing for a purchase of the property in 2006. The new loan paid off two senior mortgage loans, but the new lender failed to satisfy the third-position mortgage held by Ms. Velazquez from the available proceeds. Instead, the new lender paid those net proceeds directly to the seller. We reversed a summary judgment in favor of Deutsche Bank granting priority to the extent of the senior loans that were paid off in the refinancing, because “the surplus should have been paid to Velazquez to satisfy her properly recorded mortgage.” Id. at 84. “In addition,” we noted, the Velazquez mortgage contained a “due-on-sale” provision establishing that Ms. Velazquez would be paid when the property was sold. Id.
In the present case, the Shermans’ mortgage did not have a due-on-refinancing clause, and Deutsche Bank’s predecessor provided refinancing rather than a new mortgage loan facilitating a sale of the encumbered property. Deutsche Bank argues that the Shermans have not shown that they have been harmed or deprived of *98 a legal right by virtue of the doctrine of equitable subrogation. We disagree.
WaMu’s new loan harmed the Shermans by altering the risks of non-payment accepted by the Shermans when they extended credit in 2006. At that time, the homeowner had monthly payments of $5,530.85 per month on the Fremont loan. The WaMu refinancing resulted in a monthly increase of $1800 per month, a total of over $86,000 in additional cash obligations imposed upon the homeowner before the Shermans’ mortgage became due. WaMu turned over all the net proceeds of the 2006 loan closing to the homeowner rather than the Shermans, and the homeowner defaulted on both loans thereafter.
Additionally, the payoff of the senior Fremont mortgage by Deutsche Bank’s predecessor included a prepayment penalty in excess of $24,000. Deutsche Bank then sought (and the trial court granted) equitable subrogation in a total amount which exceeded the Fremont loan balance and lien had the WaMu refinancing not occurred. On this point, Deutsche Bank invites us to remand so that the final Deutsche Bank equitable lien can simply be reduced by the amount of the prepayment penalty. This, however, would not undo the harm. Paragraphs 25 and 26, Count III of Deutsche Bank’s operative complaint filed in May 2009, sought a priority equitable lien for “all amounts paid by WaMu to satisfy the Fremont Mortgage, hazard insurance and flood insurance,” and the sum of $726,940.39, an amount which included the prepayment penalty.[3] At the time Deutsche Bank asserted that claim, the Shermans’ mortgage had already matured and the entire loan was due and payable. In the two years which passed between the filing of Deutsche Bank’s claim and the entry of the final judgment allowing equitable sub-rogation, additional interest accrued and was claimed on the penalty amount, further eroding the Shermans’ ability to recover their loan in foreclosure. By seeking and obtaining more than a mere return to the status quo ante in Count III, Deutsche Bank improved not only the priority of its lien, but also the extent of that subrogated lien.

Conclusion

Deutsche Bank failed to demonstrate that equitable subrogation did not and would not harm the Shermans’ record-priority lien. Instead, Deutsche Bank sought and obtained relief that placed the Sher-mans in a worse, not equal, position as a result of the 2006 refinancing. In this case, as in Velazquez, the net refinancing proceeds were sufficient to pay off the Shermans’ loan, but the lender instead paid the funds to the homeowner. The new loan acquired by Deutsche Bank also required more of the homeowner’s available cash flow for loan payments (to the detriment of the Shermans) and was followed by the homeowner’s default on both loans.
The judgment below is reversed and remanded for the entry of a final judgment granting foreclosure of the Shermans’ mortgage lien according to its record priority, senior to that of the Deutsche Bank mortgage, and denying Deutsche Bank equitable subrogation under Count III of its amended complaint.
CORTEÑAS, J., concurs.

. In lieu of a payoff of the Shermans’ mortgage, WaMu could have required, as a typical condition of such loan closings (but apparently did not), a recordable subordination of the Sherman's mortgage to the new, larger, and otherwise junior in priority WaMu mortgage.

. Deutsche Bank’s lien included the substantial prepayment penalty disbursed to Fremont by WaMu, a lien increase never consented to by the Shermans.

. This was the principal amount given priority as an equitable lien and set forth in the final judgment under review, versus the $684,104 principal balance of the Fremont loan at the time of the 2006 refinancing.