# Third District Court of Appeal

## State of Florida

Opinion filed January 25, 2017.
Not final until disposition of timely filed motion for rehearing.

_____

No. 3D13-2284
Lower Tribunal No. 11-16038
_____

## Peninsula II Developers, Inc., etc.,
Appellant/Cross-Appellee,

vs.

## Gryphon Construction, LLC, etc., et al.,
Appellees/Cross-Appellants.


An Appeal from the Circuit Court for Miami-Dade County, Victoria S. Sigler and Beatrice A. Butchko, Judges.

Angelo & Banta, P.A., and Eric C. Edison (Fort Lauderdale); Pillsbury Winthrop Shaw Pittman LLP, and David T. Dekker, Michael S. McNamara and Melissa C. Lesmes (Washington, D.C.), for appellant/cross-appellee.

Kubicki Draper, P.A., and Caryn L. Bellus; O'Melveny & Myers LLP, Jonathan D. Hacker, and Bradley N. Garcia (Washington, D.C.), for appellee/cross-appellant Skyline Systems, Inc.; Brown Sims, and Marlin K. Green, and Daniel Cruz, for appellee/cross-appellant Gryphon Construction, LLC.

Before SALTER and FERNANDEZ, JJ., and SHEPHERD, Senior Judge.

PER CURIAM.

Affirmed.

SALTER and FERNANDEZ, JJ., concur.

SHEPHERD, Senior Judge, dissenting.

I respectfully dissent because appellant, Peninsula II Developers, Inc., was denied its right to recover pursuant to an assignment of convenience by Steadfast Insurance Company of its subrogation rights against Gryphon Construction, LLC, the general contractor on a condominium construction project being developed by Peninsula II Developers and Gryphon subcontractor, Skyline Systems, Inc.

**Factual and Procedural Background**

Peninsula II contracted with appellee, Gryphon Construction LLC, for construction of a 223-unit luxury condominium project in Aventura, Florida. The contract required Gryphon buy a Subcontractor and Supplier Default Insurance (SubGuard) policy to insure against a subcontractor's default. Gryphon obtained the required SubGuard policy from Steadfast Insurance with coverage limits of $20 million. The policy included a Financial Interest Endorsement which protected Peninsula II in the event Gryphon became insolvent. Gryphon subcontracted installation of drywall on the project to appellee, Skyline Systems, Inc., who installed defective drywall, necessitating extensive repairs. Gryphon began the repairs but soon became insolvent, and Peninsula II was forced to complete the repairs at a cost of over $34 million.

2

Subsequently, Gryphon, Peninsula II and Steadfast entered into certain agreements to facilitate the process of recovering the damages incurred as a result of Skyline's default. Gryphon and Peninsula II executed a "Release and Cooperation Agreement" in which the parties recognized Gryphon's insolvency and Peninsula II's entitlement to Gryphon's rights to benefits due under the SubGuard policy. Peninsula II and Steadfast also entered into A Fee and Recovery Sharing Agreement by which Steadfast assigned to Peninsula II its subrogation rights of recovery against a responsible third party, to the extent of payments it made to Peninsula II. Under this agreement, distribution of any recovered losses where to be made first to make Peninsula II whole, next to reimburse Steadfast, and finally for Peninsula II's deductible and co-payment obligations under the Subguard policy.

Accordingly, Peninsula II filed suit against Skyline, seeking approximately $34 million in damages. This amount included $16,850,258 which had been paid by Steadfast under the Subguard policy, the right of recovery to which Steadfast had assigned to Peninsula II. Prior to trial, Skyline filed a motion in limine which asked the trial court to prohibit Peninsula II from presenting evidence of damages for which Steadfast had reimbursed it, claiming that no claims or theories of recovery for those damages were present in Peninsula II's pleadings. In response, Peninsula II sought leave to amend its pleadings to correct any defects, arguing

3

that no prejudice would result to Skyline as it was aware from the beginning that Peninsula II was making a claim to recover monies reimbursed by Steadfast. The trial court granted Skyline's motion and denied Peninsula II's motion. In so doing, the trial court erred.

**Analysis**

This case turns on the difference between the two types of subrogation recognized in Florida–conventional or contractual subrogation and equitable or judicial subrogation. Conventional or contractual subrogation arises from an agreement between parties that "the party paying the debt will have the rights and remedies of the original creditor." Dade County School Board v. Radio Station WQBA, 731 So. 2d 638, 646 (Fla. 1999). Equitable or judicial subrogation, on the other hand, arises not from a contract, but from "the legal consequences of the acts and relationships of the parties." Id. "Equitable subrogation arises by operation of law after an entity involuntarily pays the debt of another, contractual subrogation arises from an agreement." "[A]n insurer's subrogation right may be expressly provided for by a clause … included in the insurance policy or in a settlement agreement with the insured . . . ." Nat'l Union Fire Ins. Co. of Pittsburg v. KPMG Peat Marwick, 742 So. 2d 328, 332 (Fla. 3d DCA 1999).

Furthermore, contractual subrogation is not a distinct cause of action, it merely entitles the subrogor to bring the same cause of action as the subrogee.

4

"[A] subrogation claim is not a new cause of action. Subrogation merely substitutes one person for another with reference to an existing lawful claim or right." Attorney's Title Ins. Fund v. Punta Gorda Isles, Inc. 547 So 2d. 1250, 1252 (Fla. 2d DCA 1989) (citing Boley v. Daniel, 72 Fla. 121, 123 (Fla. 1916)). "Since the right of subrogation is purely derivative, and insurer succeeds only to the rights of the insured, no new cause of action is created." 16 Couch on Insurance § 222:14 (3d ed. 2013).

In the instant action, Steadfast reimbursed Peninsula II for drywall damages incurred in connection with the remediation of the defective drywall. Because the subrogation rights at issue were contractual, Peninsula II was not required to plead a cause of action for equitable subrogation. Peninsula II's claims against Skyline were for breach of statutory warranty and contractual indemnity. Steadfast would be permitted to step into the shoes of Peninsula II and pursue Skyline on those exact same causes of action, to the extent of its payments to Peninsula II. However, because Steadfast assigned those rights to Peninsula II, Peninsula II was permitted to recover **all** damages on its claims for breach of statutory warranty and contractual indemnification, including the reimbursed monies from Steadfast.

Failure to allow the jury to consider the Fee Recovery Sharing Agreement and allow the reimbursed money to be used to mitigate the damage award was hardly harmless error and prejudiced Peninsula II. By its ruling, the trial court

improperly eliminated Peninsula II's ability to exercise its contractual rights and obligations to recover the reimbursed money on behalf of Steadfast. Accordingly, I would reverse and remand to allow for recovery of these damages.