IN THE DISTRICT COURT OF APPEAL
FIRST DISTRICT, STATE OF FLORIDA

NOT FINAL UNTIL TIME EXPIRES TO
FILE MOTION FOR REHEARING AND
DISPOSITION THEREOF IF FILED

CASE NO. 1D13-4068

FRATERNAL ORDER OF
POLICE, GATOR LODGE 67,

     Appellant,

v.

CITY OF GAINESVILLE,
FLORIDA,

     Appellee.

_____/

Opinion filed September 23, 2014.

An appeal from the Circuit Court for Alachua County.
Victor Lawson Hulslander, Judge.

Paul A. Donnelly and Christopher B. Deem of Donnelly & Gross, P.A., Gainesville, for Appellant.

Stephanie M. Marchman, Senior Assistant City Attorney, Gainesville, for Appellee.

WETHERELL, J.

     This appeal presents two issues of first impression concerning the availability of compliance review hearings under section 112.534, Florida

Statutes,[1] to review alleged intentional violations of the rights afforded to law enforcement officers and correctional officers by part VI of chapter 112, Florida Statutes, which is commonly referred to as the Law Enforcement Officers' (LEO) Bill of Rights. The issues are (1) whether an officer under investigation by his or her agency for a disciplinary matter is entitled to a compliance review hearing to review alleged violations of the LEO Bill of Rights occurring after the investigation is complete, and (2) whether a compliance review hearing is available when the investigation is based upon a complaint against the officer from a person within the officer's agency. For the reasons that follow, we hold that a compliance review hearing is available to review alleged intentional violations of the LEO Bill of Rights arising during an investigation irrespective of the source of the complaint that led to the investigation, but that a compliance review hearing is not available to review violations occurring after the investigation is complete.

## I. Factual and Procedural Background

This case arose out of the Gainesville Police Department's investigation of two of its officers, Officer A and Officer B.[2] Both of the officers are members of the appellant, Fraternal Order of Police, Gator Lodge 67 ("the Union").

_____

[1] All statutory references are to the 2009 version of the Florida Statutes unless otherwise indicated.

[2] The parties agreed below to refer to the officers by these pseudonyms even though the City disputed the Union's claim that the identity of the officers was confidential under sections 112.533(2)(a) or 112.534(1)(e). We express no view as

2

## A. Officer A

Officer A was the subject of a complaint filed by a public citizen. The internal affairs unit of the police department investigated the complaint and interviewed Officer A. It is undisputed that Officer A was afforded all of his rights under the LEO Bill of Rights during his interview and the investigation.

After completing the investigation, the investigator sent his report and the proposed disciplinary action forms to an employee in the City of Gainesville's human resources (HR) department to review for compliance with City policy. The HR department employee suggested several wording changes and additions to the forms, but she did not suggest any changes to the investigative report or the proposed disciplinary action.

The police department thereafter notified Officer A of the proposed disciplinary action: a 30-hour suspension, along with "written instruction and cautioning." After requesting and receiving a copy of the investigative file, Officer A made a public records request for and received his personnel file, whereupon he first learned of the HR department employee's review of the investigative report and disciplinary action forms.

The following day, Officer A submitted a written "Notice of Intentional Violation and Demand for Compliance Review Hearing Pursuant to Florida Statute

to whether it was necessary or appropriate to refer to the officers by pseudonyms under the circumstances of this case because that issue is not before us.

112.534" to the police chief. The notice alleged that, in violation of sections 112.532 and 112.533, Officer A was not provided a complete copy of the investigative file and that non-law enforcement personnel (namely the HR department employee) participated in the internal affairs investigation. The police chief denied the request for a compliance review hearing based upon Officer A's failure to comply with the procedural requirements in section 112.534.

Officer A was subsequently afforded a so-called "Bill of Rights Conference" pursuant to section 112.532(4)(b) at which he was given an opportunity to address the findings in the investigative report. Thereafter, the police department imposed the proposed disciplinary action. Officer A unsuccessfully appealed the disciplinary action through the grievance process in the collective bargaining agreement between the City and the Union.

## B. Officer B

Officer B was the subject of a complaint filed by a non-law enforcement employee of the police department. The internal affairs unit of the police department investigated the complaint and interviewed Officer B. It is undisputed that Officer B was afforded all of his rights under the LEO Bill of Rights during the interview.

Upon conclusion of the investigation, the investigator prepared a report recommending disciplinary action against Officer B. The police department

thereafter gave Officer B notice of the proposed disciplinary action: a 40-hour suspension and 8 hours of diversity training.

After Officer B was afforded a Bill of Rights Conference to discuss the findings in the investigative report, the police chief directed the internal affairs unit to ask the complainant to submit to a polygraph examination. The complainant did so, and the police department thereafter notified Officer B of its intent to impose the same disciplinary action contained in the prior notice. The notice also advised Officer B of his right to another Bill of Rights Conference.

On the morning of the second Bill of Rights Conference, Officer B submitted a "notice to come into compliance" to the investigator. The notice alleged the investigation had exceeded the 180-day period provided in section 112.532(6)(a) and that the police department violated Officer B's rights under the LEO Bill of Rights by not providing him with the results of the polygraph examination.

Officer B was provided a copy of the polygraph examination results that same day. Nevertheless, later in the day, Officer B submitted a "notice of intentional violation [and] demand for a cure" to the police chief. This notice referred to the notice provided to the investigator earlier that morning and asserted that the internal affairs unit indicated its intent to continue the alleged violations.

5

Several days later, Officer B submitted a written "Notice of Intentional Violation and Demand for Compliance Review Hearing Pursuant to Florida Statute 112.534" to the police chief. The notice alleged that, in violation of sections 112.532 and 112.533, Officer B was not provided a complete copy of the investigative file (namely, the polygraph examination results) and that the investigation exceeded 180 days. The police chief denied the request for a compliance review hearing based, in part, on the fact that Officer B did not request a hearing until after the investigation was completed and the notice of disciplinary action was issued.

The police department thereafter imposed the proposed disciplinary action against Officer B. The disciplinary action was subsequently overturned through the grievance process in the collective bargaining agreement, and Officer B received back pay for the period that he was suspended.

## C. Trial Court Proceedings

The Union filed a complaint for declaratory relief in the circuit court seeking a declaration concerning the police department's obligation to convene compliance review hearings for Officers A and B and other similarly situated officers. The trial court held an evidentiary hearing on the complaint and thereafter entered a

6

final judgment determining that neither officer (nor "those similarly situated"[3]) was entitled to a compliance review hearing.

As to Officer A, the trial court reasoned the declaratory judgment action was moot because the only remedy provided in section 112.534 is the "immediate removal of the investigator from involvement in the investigation" and the investigation of Officer A had been completed and he had already served the resulting disciplinary action. As to Officer B, the trial court reasoned that the remedy provided in section 112.534 is not available because the investigation of Officer B resulted from an internal complaint and, based upon McQuade v. Department of Corrections, 51 So. 3d 489 (Fla. 1st DCA 2010), "[t]he LEO Bill of Rights is not applicable to complaints that arise internally to a law enforcement agency."

This appeal followed.

## II. Analysis

The issues raised in this appeal involve the proper interpretation of the LEO Bill of Rights, and particularly, section 112.534. We review these issues de novo because the interpretation of a statute is a pure question of law. See Diamond

---

[3] Very little evidence was presented about other allegedly similarly situated officers, and the only finding made by the trial court pertaining to other officers was that, "[a]s to other [Gainesville Police Department] officers, between the effective date of the compliance review panel provisions contained in section 112.534, Florida Statutes, and the conclusion of trial, several requests for a compliance review panel have been made, but none has ever been convened."

Aircraft Indus., Inc. v. Horowitch, 107 So. 3d 362, 367 (Fla. 2013). Moreover, in determining whether to affirm or reverse the order on appeal, we focus on the result reached by the trial court, not its reasoning. See Dade Cnty. Sch. Bd. v. Radio Station WQBA, 731 So. 2d 638, 644-45 (Fla. 1999).

The LEO Bill of Rights affords law enforcement officers and correctional officers various rights when the officer is subject to an investigation by his or her agency that could result in disciplinary action. See § 112.532, Fla. Stat. The rights include the right to be informed of the nature of the investigation and the evidence against the officer before any interrogation; the right to counsel during any interrogation; the right to be notified of the reasons for any disciplinary action before it is imposed; the right to a transcript of any interrogation; the right to a complete copy of the investigatory file; and the right to address the findings in the investigatory report with the agency before the disciplinary action is imposed. See §§ 112.532(1)(d), (1)(g), (1)(i), (4)(a), (4)(b), Fla. Stat. Additionally, the LEO Bill of Rights prescribes the conditions under which any interrogation of the officer must be conducted, including limitations on the time, place, manner, and length of the interrogation, and restrictions on the interrogation techniques. See §§ 112.532(1)(a), (1)(b), (1)(c), (1)(e), (1)(f), Fla. Stat.

Prior to 2009, a law enforcement officer or correctional officer who was injured by his or her employing agency's failure to comply with the LEO Bill of

8

Rights could petition the circuit court for an injunction to "restrain and enjoin such violation" and to "compel the performance of the duties imposed by [the LEO Bill of Rights]." § 112.534(1), Fla. Stat. (2008). Effective July 1, 2009, this broad judicial remedy was replaced with a multi-step process culminating in a "compliance review hearing" before an administrative panel with the authority to award only limited relief: removal of the investigator from further involvement with the investigation of the officer. <u>See</u> Ch. 2009-200, § 3, Laws of Fla. (amending section 112.534).

### A.  Availability of a Compliance Review Hearing After the Investigation is Complete

The first issue in this appeal is whether compliance review hearings are available to review alleged intentional violations of the LEO Bill of Rights occurring after the investigation is complete and the agency notifies the officer of the proposed disciplinary action. Our analysis of this issue begins, and ends, with the plain language of section 112.534, which provides in pertinent part:

> (1) If any law enforcement agency or correctional agency, including investigators in its internal affairs or professional standards division, or an assigned investigating supervisor, intentionally fails to comply with the requirements of this part, the following procedures apply. . . .

> (a) The law enforcement officer or correctional officer shall advise the investigator of the intentional violation of the requirements of this part which is alleged to have occurred. The officer's notice of violation is sufficient to notify the investigator of the requirements of this part which are alleged to have been violated and the factual basis of each violation.

9

(b) If the investigator fails to cure the violation or continues the violation after being notified by the law enforcement officer or correctional officer, the officer shall request the agency head or his or her designee be informed of the alleged intentional violation. Once this request is made, the interview of the officer shall cease, and the officer's refusal to respond to further investigative questions does not constitute insubordination or any similar type of policy violation.

(c) Thereafter, within 3 working days, a written notice of violation and request for a compliance review hearing shall be filed with the agency head or designee which must contain sufficient information to identify the requirements of this part which are alleged to have been violated and the factual basis of each violation. All evidence related to the investigation must be preserved for review and presentation at the compliance review hearing. For purposes of confidentiality, the compliance review panel hearing shall be considered part of the original investigation.

(d) Unless otherwise remedied by the agency before the hearing, a compliance review hearing must be conducted within 10 working days after the request for a compliance review hearing is filed, unless, by mutual agreement of the officer and agency or for extraordinary reasons, an alternate date is chosen. The panel shall review the circumstances and facts surrounding the alleged intentional violation. . . . . The compliance review hearing shall be conducted in the county in which the officer works.

(e) It is the responsibility of the compliance review panel to determine whether or not the investigator or agency intentionally violated the requirements provided under this part. It may hear evidence, review relevant documents, and hear argument before making such a determination; however, all evidence received shall be strictly limited to the allegation under consideration and may not be related to the disciplinary charges pending against the officer. The investigative materials are considered confidential for purposes of the compliance review hearing and determination.

(f) The officer bears the burden of proof to establish that the violation of this part was intentional. The standard of proof for such a

determination is by a preponderance of the evidence. The determination of the panel must be made at the conclusion of the hearing, in writing, and filed with the agency head and the officer.

(g) If the alleged violation is sustained as intentional by the compliance review panel, the agency head shall immediately remove the investigator from any further involvement with the investigation of the officer. Additionally, the agency head shall direct an investigation be initiated against the investigator determined to have intentionally violated the requirements provided under this part for purposes of agency disciplinary action. If that investigation is sustained, the sustained allegations against the investigator shall be forwarded to the Criminal Justice Standards and Training Commission for review as an act of official misconduct or misuse of position.

§ 112.534(1), Fla. Stat.

This statutory language is clear, and the procedure provided in the statute is straightforward. First, under paragraph (a), the officer under investigation must advise the investigator of the alleged intentional violation of the LEO Bill of Rights. Then, if the investigator fails to cure the violation or continues the violation, under paragraph (b), the officer must inform the agency head of the alleged violation and the investigator must stop the interview of the officer. Next, under paragraph (c), the officer has three days to file a written notice of violation and request for a compliance review hearing. Finally, under paragraph (d), a compliance review hearing must be held within 10 working days unless the violation is remedied or the officer and the agency mutually agree to a later hearing.

Paragraph (e) establishes the purpose of the hearing: "to determine whether

11

or not the investigator or agency intentionally violated the requirements provided under [the LEO Bill of Rights]." The Union contends that this paragraph undercuts the trial court's ruling because it clearly contemplates review of alleged violations by the investigator <u>or</u> the agency. The problem with the Union's argument is that it ignores the limited remedy provided in paragraph (g) – removal of the investigator from any further involvement with the investigation of the officer – and it would render meaningless much of the remainder of the statute, at least with respect to alleged violations by the agency occurring after the investigation is complete.

For example, once the investigation is complete, it would make no sense to require the investigator to be notified and be given an opportunity to cure the violation. But that is what paragraph (a) requires. Likewise, the provisions of paragraph (b) – requiring the interview to cease and providing that the failure to respond to further investigative questions is not grounds for discipline – would serve no purpose if the procedure in section 112.534 was construed to apply to alleged violations occurring after the investigation is complete.

We are obligated to give meaning to all parts of a statute and, in doing so, we simply cannot accept the Union's argument that a compliance review hearing is available to review alleged violations of the LEO Bill of Rights occurring after the investigation is complete. We recognize that, by construing section 112.534 to

apply only to alleged violations occurring during the course of the investigation, the scope of the remedy for violations of the LEO Bill of Rights is considerably more limited than it was prior to 2009. This, however, is a function of the 2009 amendments to section 112.534, which replaced a broad judicial remedy with a narrow administrative remedy. The solution to this problem – to the extent there is one – lies with the Legislature, not the courts.

Here, the trial court correctly concluded that Officer A was not entitled to a compliance review hearing. By the time Officer A requested such a hearing, the investigation of the complaint against him was complete, and the police department had notified him of the proposed disciplinary action. At that point, a compliance review hearing would have been a meaningless exercise because it would not have provided any remedy for the violations alleged by Officer A.

In reaching this conclusion, we have not overlooked Migliore v. City of Lauderhill, 415 So. 2d 62 (Fla. 4th DCA 1982), approved 431 So. 2d 986 (Fla. 1983), which can be read to support the proposition that the remedy in the prior version of section 112.534 was not limited to alleged violations of the LEO Bill of Rights occurring during the investigation. Specifically, the court observed that:

> This section [section 112.534, Florida Statutes (1981)] operates only to immediately restrain violation of the rights of police officers by compelling performance of the duties imposed by Sections 112.531 to 112.533. Thus, where an officer under investigation is being interrogated without benefit of counsel, the agency may

13

> be restrained from violating his right to counsel; if an officer is dismissed without notice, the agency can be compelled to provide the proper notice; and, if an officer is refused review by the complaint review board, under appropriate circumstances, the agency can be compelled to grant such review.

Id. at 65. However, at the time of Migliore (and, until 2009), the remedy provided in section 112.534 was considerably broader that it is now. Compare § 112.534, Fla. Stat. (1981, 2008) (providing for an injunction "to restrain and enjoin" violations of the LEO Bill of Rights and "to compel performance of the duties imposed by [the LEO Bill of Rights]") with § 112.534(1)(g), Fla. Stat. (2009) (explaining that if the alleged violation is sustained by the compliance review panel, the agency "shall immediately remove the investigator from any further involvement with the investigation of the officer" and "direct an investigation be initiated against the investigator").

We have also not overlooked the Union's argument that, even after the investigation is complete, the officer should be afforded a compliance review hearing to "clear his name." We are not persuaded, however, that the Legislature intended the compliance review hearing to be a name-clearing hearing (as appears to be the case with the complaint review boards under section 112.532(2)); rather, as explained above, it is clear from an in toto reading of section 112.534 that the exclusive purpose of the compliance review hearing is to remedy violations of the LEO Bill of Rights occurring during the investigation by removing the investigator

14

from further involvement in the case.

Finally, we have not overlooked the dissent's argument that section 112.534(1)(g) indicates that the compliance review hearing is intended to serve a dual remedial purpose and that our interpretation of the statute does not give effect to the legislative intent that investigative misconduct be dealt with appropriately, even if first discovered after the investigation is complete. This argument is not without support in the statutory language providing for the investigation of the investigator; however, in our view, such an investigation is merely ancillary to the purpose of the compliance review hearing because, unlike the removal of the investigator, the investigation of the investigator does not "remedy" the violation of the LEO Bill of Rights and provides no direct benefit to the officer under investigation. Moreover, limiting the availability of compliance review hearings to alleged violations arising during an investigation does not insulate investigative misconduct from review because, as acknowledged by the City at oral argument, nothing precludes an officer who is the subject of an alleged violation occurring after the investigation is complete from filing an internal affairs complaint against the investigator or agency official who committed the violation. See also § 943.1395(6)(a), Fla. Stat. (providing that the Criminal Justice Standards and Training Commission may investigate "verifiable complaints" against certified officers made to the commission).

**B. Availability of a Compliance Review Hearing When the Investigation Arises Out of an Internal Complaint**

The second issue in this appeal is whether compliance review hearings are available to review alleged intentional violations of the LEO Bill of Rights arising in an investigation of complaint made by a person within the officer's agency. Our resolution of this issue begins with statutory language in sections 112.532 and 112.534, but also requires us to consider the McQuade decision relied on by the trial court.

Section 112.532 broadly provides, without qualification or exemption,[4] that the rights listed in that statute are available "<u>whenever</u> a law enforcement officer or correctional officer is under investigation . . . <u>for any reason</u>." § 112.532(1), Fla. Stat. (emphasis added). This language is clear and unambiguous and cannot be reasonably construed to support the proposition that all of the rights afforded by the LEO Bill of Rights are limited to investigations arising out of external complaints.

Likewise, nothing in section 112.534 ties the availability of a compliance review hearing to the source of the complaint. Instead, the statute provides a remedy when an agency or investigator "fails to comply with the requirements of

---

[4] <u>See</u> Op. Att'y Gen. Fla. 90-65 (1990) (observing that section 112.532(1) "contains no qualifications or exemptions from the requirement that the rights contained in s. 112.532, F.S. apply to any interrogation of a police officer by members of his agency if the investigation could lead to disciplinary action, demotion, or dismissal of the officer.").

16

[the LEO Bill of Rights]." § 112.534(1), Fla. Stat. Although courts have held that some portions of the LEO Bill of Rights apply only to external complaints,[5] it would make no sense to construe section 112.534 to provide for compliance review hearings only to remedy alleged violations arising out of investigations of external complaints because the source of the complaint has no bearing on most of the rights afforded by the LEO Bill of Rights. See, e.g., § 112.532(1) (rights during interrogation), (4) (right to advance notice of disciplinary action), (5) (protection against retaliation), Fla. Stat.; § 112.533(2) (confidentiality of complaints),[6] (3) (right to inspect personnel file), Fla. Stat.

Having interpreted the applicable statutes, our analysis would typically end here. But, because the trial court construed this court's decision in McQuade to stand for the proposition that "[t]he LEO Bill of Rights is not applicable to complaints that arise internally to a law enforcement agency," our analysis would not be complete without considering that decision.

McQuade was an appeal of a final order of the Public Employees Relations

---

[5] See McQuade, 51 So. 3d at 494 (holding that the 180-day period in section 112.532(6)(a) does not apply to internal complaints); Migliore, 415 So. 2d at 64 (holding that the purpose of the complaint review boards in section 112.532(2) is to provide the officer a means to vindicate his actions and reputations against claims made by persons outside the officer's agency).

[6] See Op. Att'y Gen. 83-90 (1983) (concluding that the statute providing for confidentiality of complaints against law enforcement officers and correctional officers applies to complaints filed by anyone, "whether that person is a member of the public or another agency or the employing agency").

Commission (PERC) dismissing an appeal filed by a correctional officer after he was fired by the Department of Corrections as a result of a complaint made by another correctional officer. See 51 So. 3d at 491. The officer argued that the Department was barred from taking disciplinary action against him because, in violation of section 112.532(6)(a), Florida Statutes (2008), more than 180 days passed between the date of the complaint and his firing. Id. PERC rejected this argument and dismissed the officer's appeal. Id. Upon review of the dismissal order, this court affirmed PERC's conclusion that the 180-day period in section 112.532(6)(a) does not apply to internal complaints. Id. at 490, 495. This holding was based largely on the Fourth District's decision Migliore, which was adopted verbatim by the Florida Supreme Court. Id. at 493-94.

The issue in Migliore was whether the purpose of the complaint review boards provided for in section 112.532(2), Florida Statutes (1981), was to review disciplinary action against a law enforcement officer. See 415 So. 2d at 64. The court explained that the only statute providing a possible explanation of the function of the boards is section 112.533, Florida Statutes (1981), which requires each law enforcement agency to have a system to investigate and determine "complaints received by such employing agency." Id. Based on this language, the Migliore court concluded that the purpose of the complaint review boards is to "provide[e] a law enforcement officer with a means of vindicating his actions and

18

his reputation against unjust and unjustified <u>claims made against him by persons outside the agency which employs him</u>." <u>Id.</u> (emphasis added). <u>Accord</u> Op. Att'y Gen. Fla. 86-91 (1986) (explaining that complaint review boards are advisory, not adjudicatory, in nature and are "to be utilized for the disposition of complaints made by persons outside of the law enforcement or correctional officer's agency and not for review of disciplinary action against law enforcement officers").

<u>McQuade</u> reasoned that the 180-day period in section 112.532(6)(a), Florida Statutes (2008), does not apply to internal complaints because the period is triggered by the receipt of a complaint and "[t]he <u>Migliore</u> court concluded that a law enforcement's 'receipt' of a complaint, as that language was used in section 112.534,[7] Florida Statutes (1981), meant its receipt of a complaint from a person outside the agency." <u>Id.</u> at 494-95.[8] The court also explained that PERC lacked

---

[7] This reference to section 112.<u>534</u> is an apparent scrivener's error because the <u>Migliore</u> court was construing the phrase "complaints received by such employing agency" in section 112.<u>533</u>. <u>See</u> 415 So. 2d at 64.

[8] We recognize that <u>McQuade</u>'s reliance on <u>Migliore</u> for this proposition is inconsistent with several opinions in which the Attorney General relied on statutory amendments adopted after <u>Migliore</u> to conclude that the language in section 112.533 referring to the receipt of complaints applies to both internal and external complaints. <u>See</u> Op. Att'y Gen. 2000-64 (2000); Op. Att'y Gen. 93-61 (1993); Op. Att'y Gen. 83-90 (1983); <u>see also</u> <u>Mullins v. Dep't of Law Enforcement</u>, 942 So. 2d 998, 1001 (Fla. 5th DCA 2006) (citing Attorney General Opinion 93-61 for the proposition that the LEO Bill of Rights applies to both internal and external complaints). However, the amendments referred to by the Attorney General did not modify the specific statutory language relied upon by the court in <u>Migliore</u>. <u>Compare</u> § 112.533, Fla. Stat. (1981) ("Every agency employing law enforcement officers shall establish and put into operation a system

19

jurisdiction to enforce the LEO Bill of Rights because the "enforcement of its provisions is to be accomplished [under section 112.534(1), Florida Statutes (2008)] through the circuit court, rather than [PERC]." Id. at 494.

Contrary to the City's argument in this appeal, McQuade did not hold that the entire LEO Bill of Rights is inapplicable to internal complaints. It merely held that the 180-day period in section 112.532(6)(a), Florida Statutes (2008), does not apply to internal complaints. Moreover, because McQuade involved an internal complaint, the fact that the court also stated that the remedy in section 112.534, Florida Statutes (2008), was available to the officer undercuts the trial court's broad reading of the decision. Indeed, the opinion would be internally inconsistent if it, on one hand, it is read to hold that the LEO Bill of Rights is inapplicable to internal complaints but, on the other hand, it explained that the remedy in section 112.534, Florida Statutes (2008), was available to the officer in that case who was the subject of an internal complaint.

We recognize that the McQuade court stated that "Migliore has been cited

_____

for receipt, investigation, and determination of complaints received by such employing agency from any person.") (emphasis added) with § 112.533(1)(a), Fla. Stattute (2009) ("Every law enforcement agency and correctional agency shall establish and put into operation a system for the receipt, investigation, and determination of complaints received by such agency from any person, which shall be the procedure for investigating a complaint a law enforcement and correctional officer and for determining whether to proceed with disciplinary action or to file disciplinary charges . . . .") (emphasis added); see also McQuade, 51 So. 3d at 494 (noting that the pertinent statutory language construed in that case "is not materially distinguishable" from the statute construed in Migliore);

20

broadly for the proposition that the LEO Bill of Rights does not apply to investigations initiated by a complaint that originates from within the agency that employs the officer under investigation." Id. at 493 (citing Kelly v. Gill, 544 So. 2d 1162 (Fla. 5th DCA 1989)). That, however, was not the holding of Migliore or the Kelly case cited in McQuade for this proposition.[9]

As discussed above, the narrow issue decided in Migliore was whether the complaint review boards provided for in section 112.532(2), Florida Statutes (1981), had authority to review disciplinary action taken against an officer. See 415 So. 2d at 64. Although the court held that the boards' purpose was to provide a means for the officer to vindicate his actions and reputation against "claims made against him by persons outside the agency which employs him," id., the court did not purport to limit the application of any other provision of the LEO Bill of Rights to external complaints. Indeed, in discussing whether the circuit court had jurisdiction under section 112.534, Florida Statutes (1981), to review disciplinary action against the officer, the court explained the operation of that statute without any suggestion that the statute's remedy was limited to external complaints. See id. at 65 (explaining that section 112.534 "operates only to immediately restrain

---

[9] Although the McQuade court's citation to Kelly was preceded by the "see, e.g." indicator, suggesting that there are other cases that stand for the same proposition, our research failed to locate any other case holding that the LEO Bill of Rights applies only when the officer is under investigation based upon an external complaint.

violation of the rights of police officers by compelling performance of the duties imposed by Sections 112.531 to 112.533").

Likewise, the issue in Kelly was not whether the LEO Bill of Rights applies to internal complaints. Instead, the issue was whether the LEO Bill of Rights applied to an investigator employed by the state attorney. See 544 So. 2d at 1164. The court held that the investigator was not covered by the LEO Bill of Rights because he was not a law enforcement officer, as defined in section 112.531. Id. at 1165. Although the court did cite Migliore in a footnote for the proposition that "it would appear that all of [the LEO Bill of Rights] deals specifically with investigations, complaints, and disciplinary action as a result of claims made against an officer by persons outside the agency [that] employs him," id. at 1165 n.5 (emphasis in original), this statement was classic dicta because it was prefaced by the acknowledgment that it was "not necessary to decide this appeal." Id.

In sum, neither McQuade, Migliore, nor Kelly stand for the broad proposition that the LEO Bill of Rights only applies when the officer is under investigation based upon an external complaint, and to the contrary, the plain language of sections 112.532 and 112.534 do not limit compliance review hearings based upon the source of the complaint. Accordingly, the trial court erred in finding that Officer B was not entitled to compliance review hearing because he was under investigation based upon an internal complaint.

22

Nevertheless, the trial court reached the correct result because, as was the case with Officer A, Officer B did not request a compliance review hearing until after the internal affairs investigation was concluded and he was notified of the proposed disciplinary action. Furthermore, Officer B would not have been entitled to a compliance review hearing in any event because (1) the police department's failure to immediately provide him a copy of the polygraph results was remedied before the hearing was requested, see § 112.534(1)(d), Fla. Stat. (indicating that a compliance review hearing need not be held if the alleged violation is "otherwise remedied by the agency before the hearing"), and (2) based upon McQuade, the police department's alleged failure to complete its investigation of the internal complaint against Officer B within 180 days is not a violation of the LEO Bill of Rights.

### III. Conclusion

In sum, for the reasons stated above, although the trial court erred in determining that Officer B was not entitled to a compliance review hearing because he was under investigation based upon an internal complaint, the court correctly determined that neither Officer A nor Officer B was entitled to a compliance review hearing under the circumstances of this case. Accordingly, we affirm the final judgment.

AFFIRMED.

23

PADOVANO, J., CONCURS. MAKAR, J., CONCURS IN PART AND DISSENTS IN PART WITH OPINION.

MAKAR, J. concurring in part, and dissenting in part.

I concur except as to Part II(A) of the majority opinion, which holds that a compliance review hearing is unavailable under section 112.534, Florida Statutes, after an agency first provides an investigative report to an officer.

At issue is the remedial scope of section 112.534, which is within the "bill of rights" for law enforcement and correctional officers. See §§ 112.531-535, Fla. Stat. Section 112.534 reflects an overall purpose of providing law enforcement and correctional officers under investigation with process and remedies where "official misconduct" is alleged against their investigators. Portions of section 112.534 support the conclusion that a key purpose of the compliance review process is to address allegations of intentional violations by investigators discovered before an investigative report is released and to provide a remedy, such as removing the investigator. See § 112.534(1)(g), Fla. Stat. ("If the alleged violation is sustained as intentional by the compliance review panel, the agency head shall immediately remove the investigator from any further involvement with the investigation of the officer."). No dispute exists that officers can raise claims of investigative misconduct prior to the time an investigative report is disclosed to them and that removal of an investigator is available.

Nothing in the statute's language or structure, however, establishes a legislative intention that the compliance review process be limited to only this

purpose and this remedial option. Indeed, the statute provides as an additional remedy for intentional violations that an "agency head shall direct an investigation be initiated against the investigator determined to have intentionally violated the requirements provided under this part for purposes of agency disciplinary action." If the agency's investigation sustains the violations, the "sustained allegations against the investigator shall be forwarded to the Criminal Justice Standards and Training Commission for review as an act of official misconduct or misuse of position." Id. This additional remedy reflects a legislative intent that confirmed investigative misconduct be dealt with appropriately, even if first discovered upon issuance of an investigative report.

Had the legislature intended to limit this remedial option to only violations discovered before an investigation is complete, it could have said so; but it has not. Missing from the legislative mandate that a compliance review panel "shall review the circumstances and facts surrounding the alleged intentional violation," see § 112.534(1)(d), is statutory language saying that such review may occur only if "the violation was discovered and alleged during the investigation." No such limitation exists. Instead, the language of section 112.534, read in conjunction with the remainder of the bill of rights, does not prohibit an officer, who first learns of possible investigative misconduct in such a report, from seeking a compliance review hearing even though the investigative work is deemed complete at that

26

point. Because investigations may be continued or reopened under section 112.532(6)(b) if new evidence is discovered, drawing a judicial line at too early a point could have the unintended effect of depriving officers of remedies prematurely in some instances.

Given the statute's remedial nature, the better reading of section 112.534 is that the compliance review process is available to adjudge claims of intentional violations if (a) they are discovered before an investigative report is released or, as is the case here, (b) they could not be discovered prior to, but surfaced and were promptly reported immediately after, the initial release of the investigative reports. The statute can serve these two remedial purposes: it can walk and chew gum at the same time.